# SUPERIOR COURT OF BALTIMORE CITY.

Filed May 22, 1925.

MARY E. MORSE, ADMINISTRA-
TRIX OF MARIA DITTMAR,
DECEASED,
VS.
NATIONAL CENTRAL BANK OF
BALTIMORE.

*Haman, Cook, Chesnut & Markell* for plaintiff.
*Venable, Baetjer & Howard* for defendant.

FRANK, J.—

On January 28, 1873, Maria Dittmar deposited with the German Savings Bank of Baltimore City, the sum of $2,825.50 and received Deposit Book No. 5755 of that bank. On May 5, a further deposit of $100 was made. On July 30, a withdrawal of $27.75 by check is entered on the book. On May 5, 1873, Mrs. Dittmar deposited with the Savings Bank $400 and received Deposit Book No. 6117. The book shows this deposit and a credit of $8.35 interest on the account. It contains no other entry except one showing, on July 30th, a withdrawal by check of $27.75. Through this entry lines have been drawn cancelling the entry and apparently indicating that an error had been made in charging the withdrawal to this particular book inasmuch as an exactly identical entry remains uncancelled in Book No. 5755, as above stated.

No entries other than the above appear on either of the books.

Mrs. Dittmar died on November 26th, 1922, and the plaintiff duly qualified as her administratrix. In September, 1923, the administratrix made demand upon the defendant for the amount of the deposits with interest, which demand was refused. No evidence was offered by either party as to any transactions or occurrences as respects the books or the deposits therein mentioned except the aforegoing. The deposit books were found by a grandson of the decedent a short time before her death in a locked drawer of a bureau in decedent's room. In this drawer she had kept certain of her more valuable papers.

As far as the evidence discloses, for a period of more than fifty years nothing was done by either the decedent or the bank with respect to these deposits.

The defendant bank was incorporated by Chapter 134 of the Acts of 1874 under the name of the German Bank of Baltimore as a commercial bank, although by its charter it was authorized to receive savings deposits. Its name was later changed to the German Bank of Baltimore City and in 1918 it became a national bank under its present name of National Central Bank of Baltimore. By deed of December 9, 1875, the defendant in its then name of German Bank of Baltimore, acquired the assets and assumed the liabilities of the German Savings Bank of Baltimore City, which had been incorporated as a savings bank on June 6, 1868.

The testimony discloses that the business of conducting a savings bank had been unprofitable and for that reason the savings bank had been merged with the German Bank of Baltimore, in the manner above indicated. (Testimony of August Weber, pp. 1-3.)

The above statement sets forth sufficient of the facts of the case to serve as a basis for the discussion of the principles of law governing its decision. Owing to the lapse of time and the death of all of the actors in the original transaction except only Mr. August Weber, now the president of the defendant bank, the testimony is meager and both sides rest their contentions largely upon presumptions of law. The destruction of the books of the Savings Bank by the fire of 1904 and by the voluntary act of the defendant shortly thereafter before removing to its new building, precludes the possibility of any light from that source being shed upon the transaction.

1. Where a deposit is shown or conceded the burden of proving payment is on the bank. The authorities are uniform on this point and it is unnecessary to cite any in its support. In fact, this statement of the burden of proof

in this case is not disputed by the defendant.

2. In the absence of rebutting circumstances, debts will be presumed to be paid after twenty years from the time when they were due or demandable. This presumption is universally recognized and is indeed admitted by the plaintiff, although its applicability to the present case is disputed.

Edmondson vs. Frazier, 1 Bland, 91 Note V.

30 Cyc. 1273, 1275, etc.

1 A. L. R., p. 780, 827.

21 R. C. L., p, 128, etc., Sec. 144 and fol.

This rule has been frequently applied to the case of deposits of money.

Sheldon vs. Heaton, 47 N. Y. Supp. 1124-5.

Rosenstock vs. Dessar, 95 N. Y. Supp. 1064.

Long, Excr., vs. Straus, 124 Ind. 84 (See facts as stated in 107 Ind. 94).

And this presumption will arise even as against a claim of the United States asserted after the expiration of 20 years.

C. & D. Canal Co. vs. U. S., 223 Fed. 926; L. R. A. 1916B 734 and note.

C. & D. Canal Co. vs. U. S., 240 Fed. 903.

Both of these cases were decided by the Circuit Court of Appeals for the Third Circuit. In the latter case it was said (page 918) that, * * * "the burden of proof shifted and the Government could no longer content itself with proving its right of action—that is, the mere declaration of a dividend (the action was for the dividends declared on shares of stock owned by the Government, having been bought more than 20 years after their declaration) —and with leaving the defendant to prove that payment had been made. The Government was now compelled to prove a negative, that is, that payment had not been made—its less favorable position being due to the well-settled and excellent rule of public policy that punishes a plaintiff for excessive delay in asserting his right."

This presumption arises entirely independent of statute being a creature of the common law and the statutes of limitations do not abrogate this common law presumption. It is a presumption of fact and not of law; it does not bar the right of action, but is merely a rule of evidence affecting the burden of proof. This presumption gathers strength with each year that is added to the first twenty and the strength of the evidence that will overcome it must be correspondingly increased.

30 Cyc. 1281.

The evidence to rebut the presumption of payment must be clear and convincing especially where, as in the case at bar, the action has been brought after the death of the creditor and of most of the officers and employees of the debtor who would know anything of the transaction.

Shaefer vs. Woodside, 257 Pa., 276; 1 A. L. R. 727.

3. Plaintiff, however, contends that the relationship between her decedent and the German Savings Bank was not that of creditor and debtor, but of beneficiary and fiduciary and that the presumption of payment cannot arise as between *cestui que trust* and trustee. The authorities cited relate to depositors of mutual, non-stock savings banks in which the depositors share, or have an interest, in all the profits. In such cases, the bank and its managing officers or trustees, are held responsible for the same degree of care, skill and vigilance in the management of the affairs of the bank as is exacted of trustees.

7 C. J. 854, Sec. 877 and notes.

While this is true, where no question of mismanagement or breach of duty is involved, the relationship with respect to the right to claim and withdraw deposits is that of debtor and creditor upon the terms embodied in the charter, by-laws and regulations of the bank.

7 C. J. 863, Sec. 906.

The German Savings Bank as shown by its Certificates of Incorporation offered in evidence and the banks which acquired its assets and assumed its liabilities were each stock corporations organized for profits to inure to their stockholders. The Savings Bank had an authorized capital stock of $520,000, divided into 20,000 shares of $26 each, entitled to such dividends as might be declared, and managed by a Board of 12 directors. The stockholders were entitled to all profits earned after paying interest to its depositors as provided in its by-laws and rules. Certainly as to such a bank, its depositors

were creditors and subject to the presumption of payment above discussed.

4. Plaintiff further insists that as a bank account is payable upon demand, the presumptive period begins to run only after demand made and that the only demand shown by the evidence is that of the plaintiff made in September, 1923. The account, however, was demandable at any time and the bank had the right to pay it over at any time. Under these circumstances the better opinion seems to be that in the absence of agreement to the contrary, the period begins to run immediately upon the deposit and that the facts and circumstances relied on to rebut the presumption must necessarily have occurred within twenty years before suit is brought.

Sheldon vs. Heaton, 47 N. Y. Supp. 1124, 1126; Rosenstock vs. Dessar, 95 N. Y. Supp. 1064; 21 R. C. L., p. 136, Sec. 157.

I hold, therefore, that the burden of proof resting on the bank to show payment is met *prima facie* by the presumption of payment growing out of the lapse of more than fifty years from the time when the deposits involved in this case were demandable by the decedent. In consequence, the burden of proving non-payment is again shifted to the plaintiff and must be met by a preponderance of the evidence.

The plaintiff's first (and only) prayer places "the burden of proof. * * * upon the defendant to establish by the preponderance of the evidence that the said funds have been paid out by the defendant upon the authority of the deceased, Maria Dittmar," and requires a verdict for the plaintiff "if the court sitting as a jury shall find that the defendant has not met this burden of proof." For the reasons above given, this prayer erroneously states the rule as to the burden of proof and is, therefore, refused.

5. Plaintiff further contends that the fact that the deposit books remained in the possession of the decedent tends to rebut the presumption of payment. This is a valid argument as to the weight of the evidence, but the cases are numerous in which the presumption has been applied notwithstanding the fact that the written evidence of the indebtedness had remained in the creditor's possession.

1 A. L. R., at p. 803.

At all events, this fact does not create any legal presumption, but only one of fact and its effect must be considered by the court sitting as a jury in connection with the other facts and circumstances shown in the evidence.

6. Furthermore, plaintiff argues that the destruction by defendant of some of the books and papers of the German Savings Bank prior to its removal to its new building after the fire of 1904, gives rise to the inference that the matter destroyed is unfavorable to the spoliator. *In odium spoliatoris omnia praesumuntur.* At the most, this presumption is one of fact to be considered by the Court sitting as a jury in view of the circumstances that this destruction took place without any knowledge of decedent's claim and 19 years before any claim was made against the defendant, so far as the evidence discloses.

The defendant's fourth prayer is in accord with the views herein expressed and will be granted. All of its other prayers will be refused. This ruling renders it unnecessary to pass upon plaintiff's special exceptions to defendant's 2nd, 3rd, 5th and 6th prayers. No motion to strike out the testimony admitted subject to exception has been filed.

The verdict of the Court sitting as a jury is for the defendant.