## UNITED STATES *v.* THOMPSON.

The United States, whether named in a State statute of limitations or not, is not bound thereby; and when it sues in one of its own courts, such a statute is not within the provisions of the Judiciary Act of 1789, which declare that the laws of the States, in trials at common law, shall be regarded as rules of decision in the courts of the United States in cases where they apply.

ERROR to the Circuit Court of the United States for the District of Minnesota.

The United States sued, Dec. 6, 1875, Clark W. Thompson, and his sureties on his official bond, as superintendent of Indian affairs in Minnesota. The breach alleged was that he, as such officer, had, prior to March 30, 1865, received $10,562.27 of the moneys of the United States, which he had neglected and refused to account for, and had converted to his own use.

The defendants pleaded that the cause of action did not accrue within ten years next preceding the commencement of the suit. The United States demurred. The demurrer was overruled, and judgment rendered for the defendants. The United States has brought the judgment here for review.

The statutes of Minnesota (c. 66, tit. 11, sect. 6) provide that an action upon a contract, express or implied (unless it be founded upon some judgment or decree of a court), shall be barred if not commenced within six years after the cause of action accrues. 2 Minn. Stat. at Large, 782.

The twelfth section of that title further provides that "the limitations prescribed in this chapter for the commencement of actions shall apply to the same actions when brought in the name of the State, or in the name of any officer, or otherwise, for the benefit of the State, in the same manner as to actions brought by citizens." Id. 783.

While a Territory, the following statute was in force in Minnesota: "The limitations prescribed in this chapter apply to actions brought in the name of the United States, in the same manner as to actions by private parties." Rev. Sts. of 1851, c. 70, sect. 13, p. 331; Revision of 1858, p. 533, sect. 13.

This statute was first passed by the territorial legislature of Wisconsin, and was continued in force over that portion of it

which, in 1848, became the Territory of Minnesota. It was modified, several years after Minnesota became a State, to read as it now does. When Wisconsin became a State, its legislation underwent the same change.

*Mr. M. S. Wilkinson* in support of the judgment below.

The real question here is, not whether the Statutes of Limitations bar the State, where she is not designated, but whether, when they extend and apply to actions brought by her, they are "rules of decision" in the Federal courts, where the United States is a party. It is submitted,—

*First,* That the terms of the thirty-fourth section of the Judiciary Act of 1789 (1 Stat. 92, Rev. Stat., sect. 721) give the same efficiency to the State statutes of limitations in the Federal courts that they have *proprio vigore* in the State courts.

*Second,* That the Statute of Limitations of the State of Minnesota bars in her courts all plaintiffs, including the sovereign; and it therefore, in the Federal courts sitting within that State, operates to bar all plaintiffs, including the sovereign.

There has never been a time since it became possible to institute a suit in Minnesota, when, by the express words of the Statute of Limitations, it did not apply to actions brought by the government to the same extent that it applied to private parties.

The statutes of the Territory had within its limits the force of acts of Congress, because its legislative power was delegated to it by Congress. All its laws were required to be submitted to Congress, and, if not disapproved, were to be in force and effect. Organic Act of Wisconsin, sect. 6, 5 Stat. at Large, p. 12; Organic Act of Minnesota, sect. 6, 9 Stat. at Large, p. 405.

The Statutes of Limitations of the Territory were not disapproved by Congress; and afterwards Minnesota was admitted into the Union, with a constitution which continued those statutes with others in force until repealed. Const. of Minnesota, sect. 2 of schedule.

It is an elementary principle that the Statutes of Limitations constitute a part of the *lex fori*, and this court, in construing them, conforms to the exposition given by the courts of the State.

*Third*, If the United States is not amply protected by the present exceptions in the Judiciary Act, Congress can at any time remedy the evil by an amendment.

*Mr. Assistant Attorney-General Smith* for the United States.

MR. JUSTICE SWAYNE, after stating the facts, delivered the opinion of the court.

This case turns upon a statute of the State of Minnesota which bars actions, *ex contractu*, like this, within a specified time, and the same limitation is applied by the statute to the State. The United States are not named in it. The court below held that the statute applied to the United States, and rendered judgment against them.

There is no opinion in the record, and we are at a loss to imagine the reasoning by which the result announced was reached. The Federal courts have been in existence nearly a century. The reports of their decisions are numerous. They involve a great variety of questions, and the fruit of much learned research. We have been able to find but two cases in the lower Federal courts in which it appears the question was raised. They are *United States* v. *Hoar*, 2 Mas. 311, and *United States* v. *Williams*, 5 McLean, 133. In both it was held, without the intimation of a doubt, that a State statute cannot bar the United States. The same doctrine has been several times laid down by this court; but it seems always to have been taken for granted, and in no instance to have been discussed either by counsel or the court. *United States* v. *Buford*, 3 Pet. 12; *Lindsey* v. *Miller's Lessee*, 6 id. 666; *Gibson* v. *Chouteau*, 13 Wall. 92.

This state of things indicates a general conviction throughout the country that there is no foundation for a different proposition. There are also adjudications in the State reports upon the subject, but they concur with those to which we have referred. Among the earliest of them is *Stoughton et al.* v. *Baker et al.*, 4 Mass. 521. In that case, Chief Justice Parsons said: "No laches can be imputed to the government, and against it no time runs so as to bar its rights." The examination of the subject by Judge Story, in *United States* v. *Hoar* (*supra*), is a fuller one than we have found anywhere else.

He and Parsons are in accord. So far as we are advised, the case before us stands alone in American jurisprudence. It certainly has no precedent in the reported adjudications of the Federal courts.

The United States possess other attributes of sovereignty resting also upon the basis of universal consent and recognition. They cannot be sued without their consent. *United States* v. *Clark*, 8 Pet. 436. If they sue, and a balance is found in favor of the defendant, no judgment can be rendered against them, either for such balance or in any case for costs. *United States* v. *Boyd*, 5 How. 29; *Reeside* v. *Walker*, 11 id. 272. A judgment in their favor cannot be enjoined. *Hill* v. *United States*, 9 id. 386. Laches, however gross, cannot be imputed to them. *United States* v. *Kirkpatrick*, 9 Wheat. 720. There is no presumption of payment against them arising from lapse of time. *United States* v. *Williams* (*supra*). They can maintain a suit in their own name upon a non-negotiable claim assigned to them. *United States* v. *White*, 2 Hill (N. Y.), 59.

The rule of *nullum tempus occurit regi* has existed as an element of the English law from a very early period. It is discussed in Bracton, and has come down to the present time. It is not necessary to advert to the qualifications which successive parliaments have applied to it.

The common law fixed no time as to the bringing of actions. Limitations derive their authority from statutes. The king was held never to be included, unless expressly named. No laches was imputable to him. These exemptions were founded upon considerations of public policy. It was deemed important that, while the sovereign was engrossed by the cares and duties of his office, the public should not suffer by the negligence of his servants. " In a representative government, where the people do not and cannot act in a body, where their power is delegated to others, and must of necessity be exercised by them, if exercised at all, the reason for applying these principles is equally cogent."

When the colonies achieved their independence, each one took these prerogatives, which had belonged to the crown; and when the national Constitution was adopted, they were imparted to the new government as incidents of the sovereignty thus

created. It is an exception equally applicable to all governments. *United States* v. *Hoar, supra; The People* v. *Gilbert,* 18 Johns. (N. Y.) 227; Bac. Abr., tit. Limitation of Actions; id., tit. Prerog. E. 5, 6, 7; 5 Com. Dig. Parliament, R. 8; Chitty, Law of Prerogatives, 379.

Congress, like the British Parliament, has made a number of specific limitations both in civil and criminal cases. They will be found in the Revised Statutes, and need not be here repeated.

The only argument suggested by the learned counsel for the defendants in error is that the Judiciary Act of 1789, re-enacted in the late revision of the statutes, declares " that the laws of the several States, except where the Constitution and treaties of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply."

It is insisted that the case in hand is within this statute. To this there are several answers.

The United States not being named in the statute of Minnesota, are not within its provisions. It does not and cannot " apply " to them. If it did, it would be beyond the power of the State to pass it, a gross usurpation, and void. It is not to be presumed that such was the intention of the State legislature in passing the act, as it certainly was not of Congress in enacting the law of 1789. *United States* v. *Hoar, supra; Field* v. *United States,* 9 Pet. 182.

The Federal courts are instruments competently created by the nation for national purposes. The States can exercise no power over them or their proceedings, except so far as Congress shall allow. This subject was considered in *The Farmers' & Mechanics' National Bank* v. *Dearing* (91 U. S. 29), and we need not pursue it further upon this occasion.

The exemption of the United States from suits, except as they themselves may provide, rests upon the same foundation as the rule of *nullum tempus* with respect to them. If the States can pass statutes of limitation binding upon the Federal government, they can by like means make it suable within their respective jurisdictions. The evils of such a state of things are too obvious to require remark.

But viewing the subject in the light of considerations *ab inconvenienti*, we need not look beyond the consequences of the ruling, if sustained, of the court below. The doctrine is alike applicable to civil and criminal actions. There are thirty-eight States in the Union. The limitations in like cases may be different in each State, and they may be changed at pleasure, from time to time. The government of the Union would in this respect be at the mercy of the States. How that mercy would in many cases be exercised it is not difficult to foresee. The constitutional relations of the head and the members would be reversed, and confusion and other serious evils would not fail to ensue.

The judgment of the Circuit Court will be reversed, and the cause remanded with directions to proceed in conformity with this opinion; and it is

*So ordered.*