CHESAPEAKE & DELAWARE CANAL CO. v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. June 7, 1915.)

No. 1919.

1. COURTS ⟪⟫375—LIMITATION OF ACTIONS ⟪⟫11—ACTIONS BY UNITED STATES.
  An action by the United States against a corporation to recover dividends which have been declared by defendant on stock owned by plaintiff is not brought as a stockholder, but as a creditor, and such action cannot be barred by a state statute of limitation.

  [Ed. Note.—For other cases, see Courts, Cent. Dig. § 983; Dec. Dig. ⟪⟫375; Limitation of Actions, Cent. Dig. §§ 35–39; Dec. Dig. ⟪⟫11.]

⟪⟫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2.** UNITED STATES ☞141—ACTIONS BY TO RECOVER DEBT—PRESUMPTION OF PAYMENT FROM LAPSE OF TIME.

> The presumption of payment from lapse of time, unlike limitation of actions, is not a matter of affirmative defense, but arises usually from plaintiff's own case. It is a question of the sufficiency of evidence to establish a cause of action. If plaintiff's evidence shows that 20 years have elapsed since the indebtedness accrued, the presumption of payment immediately arises, and he cannot recover unless he goes further and repels such presumption by evidence; and this rule applies as well to an action by the United States to recover a debt as to one by a private individual.

> [Ed. Note.—For other cases, see United States, Cent. Dig. §§ 136–139; Dec. Dig. ☞141.]

In Error to the District Court of the United States for the District of Delaware; Edward G. Bradford, Judge.

Action at law by the United States against the Chesapeake & Delaware Canal Company. Judgment for the United States, and defendant brings error. Reversed.

See, also, 206 Fed. 964.

John G. Johnson and Charles Biddle, both of Philadelphia, Pa., for plaintiff in error.

John P. Nields, of Wilmington, Del., for the United States.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. The United States is, and for many years has been, the owner of 14,625 shares of stock in the Chesapeake & Delaware Canal Company, and brings this action of assumpsit to enforce payment of three dividends that were declared thereon. The dividends in question are for 1873, 1875, and 1876, the government averring that payment has not been made. The record before us does not show precisely when or how the stock was acquired, but the ownership undoubtedly antedates the earliest of these years. The amount claimed is $51,187.50, with interest from November 17, 1911, this being the day when the Secretary of the Treasury made the first demand for payment. The district judge instructed the jury to find for the government, and the correctness of this ruling is one of the two questions presented for decision.

[1] The other question may first be disposed of, namely, the effect of the Delaware statute of limitations. This act was formally pleaded in defense, and the government challenged its application by demurrer to the plea. The demurrer was argued and sustained more than a year before the trial, and Judge Bradford's opinion overruling the plea is reported in 206 Fed. at page 964. The correctness of his decision is now attacked, the company contending that the government had abdicated its sovereignty by acquiring stock in a commercial corporation, and should therefore be treated merely as a private shareholder, who would of course be barred by the statute. We need not restate in different words the satisfactory reply of the district judge to this contention. He has carefully and correctly dis-

tinguished the cases that are cited by the company, and we adopt his opinion as expressing our own views upon this subject. We may perhaps add a few words to say that the fallacy of the company's argument seems to lurk in the assumption that in this action the government is asserting a right in its character as a stockholder. Undoubtedly the right came into being because the government owns the stock, but in no other respect has the suit anything to do with such ownership. The government is not suing as a stockholder; it is suing as a creditor, and in this character alone is it now to be considered. The right set up is a right to recover a sum of money from the company, and could be urged quite as effectively by an assignee of the dividends, although he might never have been a stockholder at all. The Delaware statute is not specially concerned with the rights of stockholders as such; it is dealing with the rights of creditor plaintiffs, no matter how such rights have been acquired; and the United States is not comprised in the general class to which such plaintiffs belong. A statute of limitations does not bind a sovereign without express words of inclusion, and in no event can the federal government be bound by such a statute passed by a state. In this particular, the United States, when it sues as a creditor, occupies an exceptional position. We may also call attention to the fact that the district judge confined his decision (and we confine ours) to the single question whether the plea of the Delaware statute set up a good defense. Neither estoppel, nor laches, nor any other equitable question, could be properly considered on demurrer to such a plea, and the cases that discuss these questions are not relevant to the point now decided.

[2] The remaining question is different in character, and requires us to examine the evidence that was offered by the government at the trial. Very little was presented; in effect, it consisted of two certificates of stock, the minute book of the board of directors showing the declaration of dividends in 1873, 1875, and 1876, and a letter from the Treasury demanding payment. The defendant offered no evidence, and in this condition of the record the district judge directed a verdict for the government, on the ground that no presumption of payment from lapse of time can arise against the United States. As an original proposition, he was evidently inclined to the belief that the ruling should have been the other way, but he felt constrained to a contrary conclusion by the dicta in two cases that will be considered hereafter.

Let us first examine the question on principle. At the outset we may note again that this is a different subject from the limitation of actions. Statutes of limitation presuppose an established substantive right, but forbid the plaintiff from enforcing it by the customary remedies. The statute is a weapon of defense, and ordinarily must be pleaded and relied on by the defendant, while the presumption or inference of payment arising from the lapse of time—generally from the lapse of 20 years—is usually drawn from the plaintiff's own case, and when so drawn it can hardly be regarded as a matter of affirmative defense. If the plaintiff cannot make out a prima facie case without showing also the fact of nonpayment for more than 20 years, the presumption of payment immediately arises, attaches at once to

his evidence, and weakens it to such an extent that he cannot recover unless he goes further and undertakes to prove facts tending to repel the presumption. The defendant is not required to repeat the proof that 20 years have elapsed without payment, for that has already appeared; he need only call the court's attention thereto, and may then rest upon the presumption or inference of fact arising therefrom until the plaintiff has strengthened the weak point in his own attack. If, however, the plaintiff makes no effort so to do, he fails altogether, but he fails solely for the reason that he has not made out his case —in other words, because his evidence lacks persuasive power. But the presumption is disputable, not conclusive. To a plea of the statute of limitations, the plaintiff cannot successfully reply that the debt is still unpaid. The defendant may admit nonpayment without impairing the effect of the plea in the least; but if he makes such an admission, or if the plaintiff offers affirmative proof to the same effect, this is a complete reply to the presumption, and establishes the right to recover. If the evidence bearing on the fact of nonpayment is ambiguous or contradictory, a question is presented for decision in the usual manner; generally by the verdict of a jury.

Neither party to this suit controverts these rules, if the action were between individual litigants; the dispute is whether they apply when the United States is a plaintiff and is attempting to prove a debt. On principle, we see no sufficient reason why the rules should not apply in such a situation. In courts of justice, facts must be proved in the same manner and by the same means, no matter who the litigants may be. The government is not privileged merely to lay its claim before such a tribunal, and demand allowance forthwith. Speaking generally, it must offer the same evidence as an individual, both in quantity and quality; and if it offers none, or if the evidence be insufficient, it fails precisely as the individual fails in similar circumstances. The property of a citizen can only be taken according to the rules and forms of law, and, even if it be the sovereign who is striving to take it by an action in court, we think the sovereign also should be required to prove his right, and to prove it with the same strictness and according to the same rules as prevail in other cases.

As a general proposition, this is scarcely open to dispute. In U. S. v. Stinson, 197 U. S. 200, 25 Sup. Ct. 426, 49 L. Ed. 724, speaking of a suit by the government to set aside a grant of land, the court said:

"The government is subjected to the same rules respecting the burden of proof, the quantity and character of evidence, the presumptions of law and fact, that attend the prosecution of a like action by an individual. 'It should be well understood that only that class of evidence which commands respect, and that amount of it which produces conviction, shall make such an attempt successful.'"

And in U. S. v. Beebee (C. C.) 17 Fed. 40, Judge McCrary, citing numerous authorities, stated the rule as follows:

"It is well settled that when the United States becomes a party to a suit in the courts, and voluntarily submits its rights to judicial determination, it is bound by the same principles that govern individuals. When the United

States voluntarily appears in a court of justice, it at the same time voluntarily submits to the law, and places itself upon an equality with other litigants."

So, also, in Mountain Copper Co. v. U. S. (C. C. A. 9th Cir.) 142 Fed. 629, 73 C. C. A. 625, this language is used:

"It is the well-established law that, when the government comes into court asserting a property right, it occupies the position of any and every other suitor. Its rights are precisely the same; no greater, no less" (citing cases).

And in Ash's Estate, 202 Pa. 422, 51 Atl. 1030, 90 Am. St. Rep. 658, the presumption was applied to the sovereign state of Pennsylvania:

"When the commonwealth comes into its courts, it is subject like all other suitors to the established rules of evidence. It must meet the burden of proof, its evidence must be relevant, material, the best attainable, and must be presented in due order under the regular rules of procedure. In all such respects it stands upon the same footing as ordinary litigants. Statutes of limitation do not apply to it, because the maxim, 'nullum tempus occurrit regi,' though probably in its origin a part of royal prerogative, has been adopted in our jurisprudence as a matter of important public policy. But rules of evidence and legal presumptions are not changed for or against the state as a suitor. A statute of limitation is a legislative bar to the right of action, but the presumption of payment from the lapse of time is not a bar at all, but simply a rule of evidence, affecting the burden of proof. Miller v. Williamsport Overseers, 17 Pa. Super. Ct. 159. It is of equitable origin, founded on experience of the ordinary course of business and human affairs, and adopted by the law in the interest of repose and the ending of litigation. There is no good reason why it should not apply to the commonwealth just as other legal rules and presumptions do. And so it has been ruled."

We need not multiply these citations; let us turn to the two cases where the dicta are found that constrained the district judge to direct a verdict for the government. Neither of them decides the point, but both contain statements that support the ruling below. The first case is U. S. v. Williams, Fed. Cas. No. 16,720, decided in 1849 by Mr. Justice McLean at circuit. The facts were these: In 1812 Williams bought land from the United States, and gave a mortgage thereon to secure $3,200 of the purchase money in four annual payments. In 1844, about 28 years after the last bond fell due, the government filed a bill to foreclose. The principal defense was that in 1813 (during the War of 1812) the United States troops had done much damage to the premises, and Williams asserted the right to set off this damage against the government's claim, thus admitting the continued existence of the debt. In order that Congress might consider the equities of the matter, the trial was delayed, and in 1846 an act was passed directing the Secretary of the Treasury to allow a credit of $2,000 on the mortgage. Nevertheless, in his answer to the bill Williams set up that he should be allowed $4,000 instead of $2,000, giving as a reason that in 1817 the commissioners that were appointed under an act of 1816 to investigate similar claims had allowed him the larger sum. It appeared, however, that in 1831 the Treasury had rejected the allowance, and the circuit court decided that (because of this rejection) the award had not been final, and that the act of 1846 had conclusively fixed $2,000 as the amount to which he was entitled. Thereupon the matter was referred to a master to state an account, etc.

In his answer Williams had also relied upon the presumption of payment from the lapse of time. It appeared that he had paid no interest for more than 20 years before the bill to foreclose was filed, but it certainly appeared also that this fact was coupled with the admission that the mortgage debt was still in existence; for he was making strenuous efforts to have his war damages liquidated in order that he might set them off against the amount sued for and still unpaid. It was in such a situation of affairs that Mr. Justice Mc-Lean said:

"The defendant, in his answer, relies upon payment from the lapse of time. But there is nothing in the case to render such a fact probable. All the circumstances go to show that payment has not been made."

This was enough. Since it appeared that payment had not been made, clearly the presumption was no longer a relevant matter; and therefore, when the opinion goes on to say:

"If, therefore, the case stood between two individuals, and the presumption of payment from the lapse of time might be made, we suppose that no such presumption can be raised against the government. Laches cannot be charged to it, under the statute or in any other form"

—it is quite plain that these remarks, which are the foundation of the ruling now under review, were merely dictum. We think they do not show that the subject had received much consideration, and we may perhaps suggest that the evident confusion in the mind of the learned justice between laches and the presumption of payment is sufficient to warrant the inference that the remarks were probably made without sufficient reflection on the distinction between these two subjects.

After the master reported, Williams appears to have renewed his contention, and a second opinion was delivered in 1850 (Fed. Cas. No. 16,721), and substantially the same remarks were repeated by the learned justice:

"It is also set up, as matter of defense, that from the lapse of 30 years which have transpired since this mortgage was executed, there having been no payment of interest within 20 years, the court will presume the mortgage to have been satisfied. If this rule applied to the government, the facts in the case show that the money has not been paid. This clearly appears from the acts of the defendant, in applying to Congress, and in the preparation made to establish the offset to the mortgage. But laches are not chargeable to the government. The statute of limitations does not run against it; and on the same principle, the lapse of time affords no presumption of payment against the state."

Here again there appears to be some confusion of thought between a statute of limitation and the presumption arising from lapse of time, so that we think it safe to say that the subject of the presumption could not have had careful attention. In brief, having decided that the facts showed nonpayment, the learned justice declares without need that, even if the facts had not shown it, the presumption of payment would not have arisen. It is no doubt true that dicta may, and do, differ in weight. Sometimes they seem to be deliberate expressions of opinion, and may differ but little from a solemn decision; but when they are casual and apparently no more than expres-

sions of a passing thought, even about a matter having some relevancy, we have high authority for laying them respectfully aside.

In Pollock v. Farmers' Loan & Trust Company, 157 U. S. at page 574, 15 Sup. Ct. 687, 39 L. Ed. 759, Chief Justice Fuller, speaking for the court, said:

"Doubtless the doctrine of stare decisis is a salutary one, and to be adhered to on all proper occasions, but it only arises in respect of decisions directly upon the points in issue.

"The language of Chief Justice Marshall, in Cohens v. Virginia, 6 Wheat. 264, 399 [5 L. Ed. 257] may profitably again be quoted: 'It is a maxim not to be disregarded that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.'"

And in Carroll v. Carroll, 16 How. 286, 14 L. Ed. 936, Mr. Justice Curtis said:

"If the construction put by the court of a state upon one of its statutes was not a matter in judgment, if it might have been decided either way without affecting any right brought into question, then, according to the principles of the common law, an opinion on such a question is not a decision. To make it so, there must have been an application of the judicial mind to the precise question necessary to be determined to fix the rights of the parties and decide to whom the property in contestation belongs. And therefore this court, and other courts organized under the common law, has never held itself bound by any part of an opinion, in any case, which was not needful to the ascertainment of the right or title in question between the parties"—quoting from Cohens v. Virginia, supra [6 Wheat. 264, 5 L. Ed. 257], and then going on to say: "The cases of Ex parte Christy, 3 How. 292, and Peck v. Jenness, 7 How. 612 [12 L. Ed. 841], are an illustration of the rule that any opinion given here or elsewhere cannot be relied on as a binding authority, unless the case called for its expression. Its weight of reason must depend on what it contains."

See, also, The Atalanta, 3 Wheat. 423, 4 L. Ed. 422; U. S. v. Joseph, 94 U. S. 618, 24 L. Ed. 295; Wisconsin Railroad Co. v. Price County, 133 U. S. 509, 10 Sup. Ct. 341, 33 L. Ed. 687; Hans v. Louisiana, 134 U. S. 20, 10 Sup. Ct. 504, 33 L. Ed. 842; McCormick Machine Co. v. Aultman, 169 U. S. 611, 18 Sup. Ct. 443, 42 L. Ed. 875; Bardes v. Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175; Bryan v. Bernheimer, 181 U. S. 197, 21 Sup. Ct. 557, 45 L. Ed. 814.

In the other case on which the district judge relied (U. S. v. Thompson, 98 U. S. 486, 25 L. Ed. 194), no question of presumption was either raised or decided. The single point was whether the Minnesota statute of limitations was to be applied to the government, and the decision was in the negative. In the course of the opinion, Mr. Justice Swayne illustrated his reasoning in the following paragraph:

"The United States possess other attributes of sovereignty resting also upon the basis of universal consent and recognition. They cannot be sued without their consent. United States v. Clarke, 8 Pet. 436 [8 L. Ed. 1001]. If they sue, and a balance is found in favor of the defendant, no judgment can be rendered against them, either for such balance, or in any case for costs. United States v. Boyd, 5 How. 29 [12 L. Ed. 36]; Reeside v. Walker, 11 How.

272 [13 L. Ed. 693]. A judgment in their favor cannot be enjoined. Hill v. United States, 9 How. 386 [13 L. Ed. 185]. Laches, however gross, cannot be imputed to them. United States v. Kirkpatrick, 9 Wheat. 720 [6 L. Ed. 199]. There is no presumption of payment against them arising from lapse of time. United States v. Williams, supra. They can maintain a suit in their own name upon a nonnegotiable claim assigned to them. United States v. White, 2 Hill (N. Y.) 59 [37 Am. Dec. 374]."

This is all there is—a passing reference to the dictum in U. S. v. Williams—and we think little indication is thereby afforded that the subject of presumption from lapse of time was either presented or considered. Indeed, the argument of counsel (98 U. S. on page 487, 25 L. Ed. 194), states that "the real question" pressed upon the court was whether the situation should be governed by so much of the Judiciary Act as provides:

"That the laws of the several states, except where the Constitution, treaties * * * of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States in cases where they apply." Act Sept. 24, 1789, c. 20, § 34, 1 Stat. 92.

And the opinion confirms the statement of counsel, for it declares distinctly that this was "the only argument suggested by the learned counsel for the defendants in error."

It seems to us impossible, therefore, to treat the remarks in the two cases cited as the equivalent of a considered decision, or even as a deliberate expression of opinion after argument and reflection; and accordingly we feel justified in following the general rule about the kind of evidence required from the United States, that has been established in the numerous cases referred to above. At another trial, the government will probably be able to offer evidence in reply to the presumption, and the whole controversy can be heard and decided. The record does not advise us why no evidence of nonpayment was offered in the present trial. Apparently such evidence must have been available, but for some reason it was not produced. We may perhaps be wrong about this, however, for the evidence may have been contained in a deposition that was offered by the government and excluded by the court; but of course, as this exclusion was a ruling in favor of the company, the correctness of that decision could not be brought up on this writ of error.

For the reasons given the judgment is reversed, and a new trial is awarded.