**TEO of Pago Pago and ROPATI of Pago Pago, Plaintiffs**

**v.**

**TOTOA of Pago Pago, Defendant**

## No. 5-1946

## High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Nuumau" in Pago Pago]

## June 9, 1947

A. A. MORROW, *Chief Justice;* MALEPEAI, *District Judge;* and NUA, *District Judge.*

DECISION

Heard at Fagatogo June 3, 1947 at 9:00 A.M.
Eddie T. Teo and Sianava R. S. Teo, counsel for Teo and Ropati; Pausa for Totoa.

MORROW, *Chief Justice.*

Totoa offered certain land named Nuumau located at the headwaters of Pago Pago Bay for registration. The offer was accompanied by a survey of such land made by A. Narruhn, Sept. 20, 1945. Teo and Ropati filed objections to such proposed registration. Hence this litigation. The court viewed the premises prior to the hearing. At the hearing Totoa claimed the land as her own individual property. Teo claimed that it was the communal land of the Teo family. Ropati also claimed that it was the communal land of the Teo family of which he is a member. Totoa is a member of the Teo family.

The highway around Pago Pago Bay passes through this land. Totoa has a house on that part which is on the sea side of the highway. The former Mormon Church and a frame house stand on the part on the land side of the highway.

At a prior hearing on a petition for entry of a restraining order growing out of the offer of Totoa to register the land, the court directed that Mr. and Mrs. O. Ah Mu be permitted to remain in a house on the land until this case should be decided. At the hearing on June 3, 1947 it appeared that the ownership of such house was not involved in the case. Mr. & Mrs. O. Ah Mu filed no objection to the registration of the land. It must be concluded, therefore, that they claim no interest in it.

It appeared from the evidence that what is approximately the same land offered for registration was leased on June 22, 1905 to the Church of Jesus Christ of Latter Day Saints by Teo Tauvaga and Letuli Vaetasi for a term of 40 years. Such lease is recorded in Vol. I, Register of Native Leases, at page 237. Totoa is the blood daughter of the above Teo Tauvaga. He died in December 1939 and is buried on the land side of the surveyed tract in a grave close to the church.

Pausa, counsel for Totoa, is the blood son of Teo Tauvaga and a brother of Totoa. He was Totoa's chief witness.

Teo Tauvaga held the Teo title when the above lease was made and for a short period thereafter. The matai name records show that the present Teo Falepopo became the Teo in 1918. Tauvaga rendered service to Teo Falepopo.

Totoa bases her claim upon the theory that the land was the communal land of the Teo family when her father, Teo Tauvaga, became the matai; that being the matai he had the authority to convert such communal land into his own individually owned land; that he did so while such matai and later leased the land to the Church of Jesus Christ of Latter Day Saints; that upon Tauvaga's death in 1939 she (Totoa) inherited the reversion and upon the expiration of the lease on June 22, 1945 became entitled to possession. Such theory is fully substantiated by the following excerpt from the testimony of Pausa:

"C. J. Before your father became the Teo was this land communal family land of the Teo?

A. Yes.

Q. So you admit that this land used to be communal land?

A. I admit that this land Nuumau is Teo Tauvaga's land.

Q. From where did he get this land?

A. From his own authority because he is the pule of the Teo title also.

Q. What did your father Tauvaga do to turn this land from communal family land into his individually owned land?

245

A. As I have stated my father is the pule of that title.

Q. In other words because your father was the Teo he turned this land from communal family land into his own individually owned land, is that correct?

A. Yes, I have said my father is the supreme authority of the title Teo and that is why he turned his land to his children.

Q. I thought you said it was his individually owned land?

A. Teo Tauvaga is my father and if it belongs to my father it belongs to his sons and daughters too.

Q. What we would like to know is how that land was turned by your father from Teo communal land into Tauvaga's individually owned land?

A. According to the Samoan customs the matai is the pule of all the family land and if the matai wants to take that land to his private property he can do so because he has the authority. He leased it to the Mormons.

Q. Did your father turn that land into his own private property, that is convert it?

A. To prove that my father is buried on the land. . . .

Q. Did the family get together and agree that your father should have that land?

A. As I have stated before my father is the supreme authority of the Teo family and he does not have to call everyone to come in and tell them.

Q. I take it that your father just because he was the matai turned this land from communal land to private land?

A. Yes because he is the pule of the Teo title."

■ The fallacy of the theory is that the matai cannot, either by law or pursuant to Samoan customs, convert communal land of the family into his own individually owned land upon his own authority. If the matai could convert one piece of communal land into his own individually owned property upon his own authority, he could convert all the communal lands of the family into such individually owned property and require all the members of the family to move off. If one matai could do this, all the matais in American Samoa could do it and the people, matai's excepted, would have no place to live and grow their food.

Such a proposition is unthinkable and is not countenanced by either Samoan custom or law. While the matai has some authority over the family land, he is nevertheless a sort of trustee and holds the land for the benefit of the members of the family. He cannot on his own authority deprive the family of its land by making it his own.

It follows from the evidence and the law that the land offered for registration is not the individually owned land of Totoa.

■ As heretofore stated the highway around Pago Pago Bay runs through this land. As will appear from Sec. 1225 of the present Code (the substance of this section was contained in sec. 89 of the former Code) certain land lying between the highway and the highwater mark was condemned for public use. By Par. 4 of said Sec. 1225 it appears that the persons whose land was so condemned had 3 months from Sept. 3, 1900 to file claims for compensation for the same.

We think, in this specific case, that the part of the land on the sea side of the highway is government property; that the location of the highway where it is, long acquiesced in by the parties concerned and the Government, determines in this particular case the boundary between the part condemned and the adjoining land. See I Tiffany on Real Property (2nd Ed.) Sections 295 and 296.

■ The fact that the lease of June 22, 1905 to the Church of Jesus Christ of Latter Day Saints included the land on the sea side of the road did not deprive the government of its property. One man cannot deprive another man of his property merely by making a lease of it to a third person.

■ Since the statute of limitations does not run against the government, unless the statute so provides (which it does not in American Samoa) the government did not lose

247

title to the sea side of the land through the operation of the doctrine of adverse possession. See I Tiffany on Real Property (2nd Ed.) Section 510. The rule exempting the government from the operation of the statute of limitations "applies in favor of the states of the Union; in the absence of a provision making the state subject to the statute of limitations no title by adverse possession can be acquired against the state no matter how long continued." 2 Corpus Juris pp. 213–4. See *U.S. v. Thompson,* 98 U.S. 486 at p. 489.

The evidence showed that prior to his death Tauvaga asked Teo Falepopo for permission to be buried on the land. Such permission was granted and Tauvaga was buried on the part of the land on the land side of the highway. This request by Tauvaga was an implied recognition of the ownership of the land by the Teo family.

It is clear from the evidence and the applicable law that the part of the land offered by Totoa for registration and lying on the land side of the highway, i.e. west of the highway passing through the land as shown on the survey by A. Narruhn, Sept. 20, 1945, is the communal land of the Teo family.

It is, therefore, ORDERED, ADJUDGED AND DECREED that the part of the land Nuumau offered by Totoa for registration and lying on the land side of the highway, i.e. west of the highway passing through the land as shown on the survey by A. Narruhn, Sept. 20, 1945, be registered as the communal family land of Teo in his capacity as matai of the Teo family.

Since most of the cost of the survey paid by Totoa will ensure to the benefit of the Teo family, court costs of $37.50 are hereby assessed against Teo, the same to be paid within 30 days.