

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE SEP 0 7 2017

*Fairhurst, CJ.*
**CHIEF JUSTICE**

This opinion was filed for record

at 8:00 Am on September 7, 2017

*Susan L. Carlson*

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| BASILIO CORNELIO CARRERA, an unmarried individual, by the DEPARTMENT OF LABOR & INDISTRIES, as statutory assignee, | |
| Respondent, | |
| v. | NO. 93799-1 |
| THOMAS OLMSTEAD and BARBRA E. OLMSTEAD, husband and wife, and the marital community comprised thereof; LAW OFFICE OF THOMAS S. OLMSTEAD, a Washington sole proprietorship; JOHN DOES and JANE DOES 1 through 10 inclusive, | |
| Defendants, | EN BANC |
| and | |
| SUNHEAVEN FARMS, a Washington General Partnership; SUNHEAVEN FARMS, LLC, a Washington limited liability company; BRENT SCHULTHIES FARMS, LLC, a Washington limited liability company; BRENT SCHULTHIES and ELAINE SCHULTHIES, husband and wife, and the marital community comprised thereof, individually and as general partner of Sunheaven Farms; and JOHN DOES and JANE DOES 1 through 10 inclusive, | Filed SEP 0 7 2017 |
| Petitioners. | |

STEPHENS, J.—Basilio Carrera lost his right hand in a workplace accident. We are asked to determine whether the Department of Labor and Industries (L&I) may pursue a third party claim for Carrera's injuries against Sunheaven Farms LLC, the contractor responsible for workplace safety at Carrera's job.

We affirm the Court of Appeals' holding that L&I may pursue such a claim. The Court of Appeals correctly concluded that statutes of limitations do not run against the sovereign when, as here, the State brings an action in the public interest. Benefit to a private party in addition to that state interest does not strip a state action of its sovereign character. Here, L&I's claim stands to benefit the State by reimbursing the medical aid fund (Fund) and furthering public policy goals; it is therefore exempt from the statute of limitations under RCW 4.16.160.

The Court of Appeals also correctly interpreted chapter 51.24 RCW as authorizing L&I to recover damages beyond what it may retain. RCW 51.24.030(5) authorizes L&I to recover all damages except loss of consortium. Sunheaven's attempt to restrict recovery to economic damages alone is unsupported by the statutory text. L&I may seek both economic and noneconomic damages, but any recovery must be distributed according to the formula provided in RCW 51.24.050(4), which authorizes

L&I to retain only legal costs and expenditures from the Fund and to distribute the rest to the injured worker.

## FACTS AND PROCEDURAL HISTORY

In the summer of 2009, Brent Hartley Farms hired 19-year-old Carrera as a seasonal laborer. Carrera's job was to assist with sorting and packing harvested onions. At the start of the season, Carrera and the other new hires received a basic safety lecture.[1] Workplace safety training and compliance was the responsibility of third party contractor Sunheaven, which provided Brent Hartley Farms and other local farms with centralized administrative and operational support.

On August 14, 2009, Carrera's job changed. His supervisor took him to the farm warehouse, gave him a hand broom, and told him to sweep the floor. He instructed Carrera to dump the contents of his dust pan onto a nearby conveyor belt, which carried garbage and plant debris out of the warehouse and into waiting trucks. In an alleged violation of state law, the conveyor's side guards had been removed. Carrera received no additional safety training for his new role, nor was he advised how to work safely in the proximity of the modified conveyor belt. While Carrera was sweeping, crouched next to the conveyor, the machine caught his hand or sleeve. The conveyor severed his right hand and wrist from his forearm. Unable to reattach the limb, doctors at the

---

[1] The safety meeting was conducted in English, with no employer-provided translator. Carrera, a native of Mexico, spoke "very little English." Clerk's Papers at 286.

Harborview Medical Center performed a medical amputation at the forearm level. In addition to the loss of his dominant hand, Carrera suffers ongoing pain and discomfort and was diagnosed with posttraumatic stress disorder. On July 11, 2014, L&I classified Carrera as "totally and permanently disabled" and placed him on pension support. Clerk's Papers at 214.

After the accident, Carrera retained attorney Thomas Olmstead. Olmstead sued Brent Hartley Farms, notwithstanding the employer's statutory immunity from nonintentional tort liability. The superior court dismissed the suit. Olmstead failed to name Sunheaven as a defendant and also failed to inform L&I of the case at the time of filing. L&I did not learn of Carrera's claim until its dismissal, at which point L&I identified Sunheaven as a potentially liable third party. L&I then sent notice to Carrera that it would pursue a third party action if he did not. *See Carrera v. Olmstead*, 196 Wn. App. 240, 244, 383 P.3d 563 (2016); RCW 51.24.050(1). When Carrera did not respond within 60 days, his claim was statutorily assigned to L&I. *See id.*; RCW 51.24.070(2). L&I initially brought a malpractice claim against Olmstead in Kitsap County Superior Court and later amended its complaint to add a third party negligence claim against Sunheaven. The case before this court relates only to this third party claim.

Sunheaven moved for partial summary judgment. It conceded that L&I could recover damages when assigned an injured worker's claim under RCW 51.24.050, but asked the trial court to limit any recovery to the expected cost of Carrera's L&I benefits package.[2] The trial court granted Sunheaven's motion and held that because more than three years had passed, any tort claim by Carrera was time barred—and thus L&I's attempt to recover Carrera's noneconomic damages was barred as well. However, the trial court allowed L&I to seek reimbursement of its benefits liability via recovery of economic damages capped at the lien amount. L&I appealed.

The Court of Appeals reversed. *Carrera*, 196 Wn. App. at 243. That court held that while L&I may not retain Carrera's noneconomic damages, RCW 51.24.050 authorizes it to "seek[] and recover[] damages greater than the amount it may retain." *Id.* at 253. The Court of Appeals rejected the trial court's approach as "effectively split[ting] the cause of action by limiting the available damages." *Id.* Reasoning that allowing L&I to litigate third party actions benefits the public, the Court of Appeals held that the statute of limitations does not apply to L&I's claims under RCW 51.24.050. *Id.* at 258. Sunheaven appealed, and this court granted review. *Carrera v. Olmstead*, 187 Wn.2d 1017, 390 P.3d 349 (2017).

---

[2] L&I calculated the lien amount for Carrera's past and future benefit payments to be $788,418.

## ANALYSIS

We granted review to address two questions: (1) whether RCW 4.16.160 exempts third party claims assigned to L&I under RCW 51.24.050 from the relevant statute of limitations and (2) whether chapter 51.24 RCW authorizes L&I to seek damages beyond the amount necessary to reimburse the Fund.[3] We answer both questions in the affirmative.

A.   Overview of Third Party Liability under Washington's Industrial Insurance Act

The Industrial Insurance Act (Act), chapter 51.24 RCW, removes most workplace injury claims from Washington's common law tort regime. *See* RCW 51.04.010. The Act is structured around a "grand compromise" between workers and employers: injured workers are guaranteed certain benefits regardless of fault, while employers are immunized from workplace negligence actions. *Birklid v. Boeing Co.*, 127 Wn.2d 853, 859, 904 P.2d 278 (1995); RCW 51.04.010. Contributions from nonexempt employers are directed into a common Fund, which L&I uses to pay benefits to injured workers. The result is predictable payments and limited liability for

---

[3] For the first time on appeal, Sunheaven advances a res judicata argument. Because this argument is belatedly raised, we decline to address it. *See, e.g., Singleton v. Wulff*, 428 U.S. 106, 120-21, 96 S. Ct. 2868, 49 L. Ed. 2d 826 (1976) (refusing to address new argument on appeal); *Wilcox v. Basehore*, 187 Wn.2d 772, 788-89, 389 P.3d 531 (2017) (declining to reach issue raised for the first time on appeal).

employers, while injured workers receive "speedy and sure" (albeit reduced) relief. *Flanigan v. Dep't of Labor & Indus.*, 123 Wn.2d 418, 422, 869 P.2d 14 (1994).

As articulated by the legislature, the purpose of the Act is twofold: to protect industry and to safeguard the interests of Washington workers. The Act states:

> The common law system governing the remedy of workers against employers for injuries received in employment . . . proves to be economically unwise and unfair. . . . *The remedy of the worker has been uncertain, slow and inadequate. . . . The welfare of the state depends upon its industries, and even more upon the welfare of its wage worker.* The state of Washington, therefore, . . . declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy.

RCW 51.04.010 (emphasis added). The Act is intended to ensure the survival of industry while protecting injured workers. *Id.* The Act thus benefits both workers and employers—and by extension, "[t]he welfare of the state." *Id.*

*The Act Preserves Third Party Liability for Workers' Injuries*

While it generally immunizes employers from liability for negligence, the Act extends no such protection to third parties. Instead, RCW 51.24.030 carves out an exception to the general abolition of civil suits by authorizing an injured employee or her beneficiary to sue potentially liable third parties. *See* RCW 51.24.030(1) ("If a third person, not in a worker's same employ, is or may become liable [for] . . . a worker's injury . . . , the injured worker or beneficiary may elect to seek damages from the third person.").

Third party suits serve dual functions: first, nonemployers who are legally and factually responsible for a worker's injury can be held accountable and required to share the burden of compensation. Second, a successful third party action is the only way an injured employee may recover noneconomic damages. Normally, the benefits guaranteed by the Act "do not provide full compensation for the damages incurred." *Flanigan*, 123 Wn.2d at 423 (noting worker's compensation benefits "cannot take into account noneconomic damages, such as an employee's own pain and suffering"). In creating a third party cause of action, the legislature signaled that the award injured workers typically receive—i.e., worker's compensation—is a mandatory floor, not a ceiling. A worker may "increase his or her compensation beyond the Act's limited benefits" by suing liable third parties. *Id.* at 424.

### *RCW 51.24.050 Allows Assignment of an Injured Worker's Third Party Claim to L&I*

An injured worker may sue a third party in one of two ways: the worker or his beneficiary may elect to bring the claim himself, or he can assign it to L&I. *See* RCW 51.24.030, .050. If the worker chooses to sue, he must inform L&I of the action. RCW 51.24.030(2).[4] If the worker elects not to proceed, or does nothing, the claim is assigned to L&I by operation of law. RCW 51.24.050, .070(2). To

---

[4] Note that when the worker brings suit, L&I may intervene as a party "to protect its statutory interest in recovery." RCW 51.24.030(2). The State may also petition a court to assign the claim to L&I if it is not being diligently prosecuted. *See* RCW 51.24.070(3).

prevent unnecessary delays, RCW 51.24.070 allows L&I to set a timeline for the decision: receipt of a demand letter gives the worker 60 days to exercise his right of election. RCW 51.24.070(1)-(2). If the worker does not respond, as in this case, the claim is assigned to L&I. *Id.* at .070(2).

Assignment puts L&I in the shoes of the injured worker. *See* RCW 51.24.050(1) (assigning "the cause of action to the department or self-insurer, which may prosecute or compromise the action in its discretion in the name of the injured worker"). As the assignee of the worker's claim, L&I may recover "damages" against any third party that "is or may become liable" for the worker's injury. RCW 51.24.030(1). L&I's potential recovery is explicitly defined as "includ[ing] all damages except loss of consortium." *Id.* at (5).

If L&I's claim is successful, any recovery is divided between L&I's legal costs, the injured worker, and reimbursing the Fund. RCW 51.24.050 states:

> (4) Any recovery made by the department or self-insurer shall be distributed as follows:
> (a) The department or self-insurer shall be paid the expenses incurred in making the recovery including reasonable costs of legal services;
> (b) The injured worker or beneficiary shall be paid twenty-five percent of the balance of the recovery made . . . ;
> (c) The department and/or self-insurer shall be paid the compensation and benefits paid to or on behalf of the injured worker or beneficiary by the department and/or self-insurer; and
> (d) The injured worker or beneficiary shall be paid any remaining balance.
> (5) Thereafter no payment shall be made to or on behalf of a worker or beneficiary by the department and/or self-insurer for such injury until the

amount of any further compensation and benefits shall equal any such remaining balance.

In sum, the distribution formula first repays L&I for its litigation costs, then distributes 25 percent of whatever remains to the worker, then reimburses the Fund for benefit payments L&I has *already paid*; and finally gives the injured worker any remaining balance. RCW 51.24.050(4). The statute ensures that the worker will not recover twice. Regular benefit payments cease for as long as the worker receives equivalent payouts under RCW 51.24.050(4)(d). *See id.* at (5). Thus, if the remaining balance of L&I's recovery is greater than the remaining lien amount, the worker will receive no further benefits from L&I. *Id.*

B.     L&I's Claim Is Not Subject to the Statute of Limitations Because Actions under RCW 51.24.050 Benefit the State

States, when acting in their sovereign capacity, are generally exempt from statutes of limitations. *See, e.g.*, *State v. LG Elecs., Inc.*, 186 Wn.2d 1, 12, 375 P.3d 636 (2016). Sunheaven nevertheless argues that L&I's third party claim against it is subject to the statute of limitations. *See* Pet'rs' Suppl. Br. at 11-12. Sunheaven asserts that when "the state's action is brought for the benefit of a private party, no sovereign action is implicated." *Id.* at 17 (citing *Herrmann v. Cissna*, 82 Wn.2d 1, 5, 507 P.2d 144 (1973). Sunheaven oversimplifies this court's case law. L&I's third party action stands to benefit both Carrera and the State; shared benefit is sufficient to retain the sovereign character of the action. *See, e.g.*, *Herrmann*, 82 Wn.2d at 6.

Because L&I's claim benefits the State, it is exempt from the statute of limitations under RCW 4.16.160.

### Statutes of Limitations Do Not Run against a Sovereign Acting for the Public Benefit

Historically, statutes of limitations have not applied to states absent their explicit consent. *See, e.g., LG Elecs.*, 186 Wn.2d at 8 n.3 (explaining the common law doctrine "'"*nullum tempus occurrit regi*,"'" or "'no time runs against the King.'" (quoting Sigmund D. Schutz, *Time to Reconsider* Nullum Tempus Occurrit Regi—*The Applicability of Statutes of Limitations against the State of Maine in Civil Actions*, 55 ME. L. REV. 373, 374 (2003)). In part, this reflects the age-old principle that the sovereign's rules do not automatically bind the sovereign itself. *Id.* at 12. More pragmatically, exempting states from statutes of limitations reflects the view that when government executes its duties to protect the public, the concerns associated with stale claims are outweighed by public policy considerations. *See, e.g., Bellevue Sch. Dist. No. 405 v. Brazier Constr. Co.*, 103 Wn.2d 111, 114, 691 P.2d 178 (1984) ("'It was deemed important that, while the sovereign was engrossed by the cares and duties of his office, the public should not suffer by the negligence of his servants.'" (quoting *United States v. Thompson*, 98 U.S. (8 Otto) 486, 489-90, 25 L. Ed. 194 (1878))).

Washington has conditionally consented to certain statutes of limitations. At issue in this case is RCW 4.16.160, which states in relevant part:

> The limitations prescribed in this chapter shall apply to actions brought in the name or for the benefit of any county or other municipality or quasimunicipality of the state, in the same manner as to actions brought by private parties: PROVIDED, That . . . *there shall be no limitation to actions brought in the name or for the benefit of the state*, and no claim of right predicated upon the lapse of time shall ever be asserted against the state.

(Emphasis added.) Absent an express provision to the contrary, RCW 4.16.160 exempts any action brought for the benefit of the State from the statute of limitations. *Id.; see also Bellevue Sch. Dist. No. 405*, 103 Wn.2d at 120.

An action is for the benefit of the State when the State acts in its sovereign—rather than proprietary—capacity. *See, e.g., State v. Vinther*, 176 Wash. 391, 393, 29 P.2d 693 (1934); *Herrmann*, 82 Wn.2d at 4-5. If the State brings the claim as an exercise of its governmental authority and "in furtherance of its public policy," the statute of limitations does not apply. *Vinther*, 176 Wash. at 393. By contrast, defendants may assert a statute of limitations defense "when the state is a mere formal plaintiff in a suit, not for the purpose of asserting any public right or protecting any public interest, but merely to form a conduit [between private litigants]." *Id.* (citing *United States v. Beebe*, 127 U.S. 338, 8 S. Ct. 1083, 32 L. Ed. 121 (1888)).

*State Actions under RCW 51.24.050 Are Exempt from the*
*Statute of Limitations Because They Benefit the Public*

It has been settled law for nearly a century that the State acts as a sovereign when it sues third parties liable for workplace injuries. *See id.* at 394-95 (such claims are sovereign actions because the underlying "[A]ct, as a whole, is the exercise of a governmental function in the fullest sense of the word, having its support in the police power of the state"). Sunheaven argues this case falls into an exception to that general rule, namely that a state instead acts in a proprietary capacity when it is merely a "formal plaintiff" in a suit litigating purely private interests. *See* Pet'rs' Suppl. Br. at 17-18; *Vinther*, 176 Wash. at 393. Sunheaven relies on *Herrmann* to argue that L&I's suit cannot be a sovereign action because Carrera stands to benefit. *See* Pet'rs' Suppl. Br. at 17-18. But *Herrmann* does not support so broad an assertion.

In *Herrmann*, the court held that the statute of limitations does not apply to claims by the insurance commissioner in his capacity as statutory rehabilitator of a bankrupt insurance company. 82 Wn.2d at 1; former RCW 48.31.120(2) (1947), *recodified as* RCW 48.99.020(2). While rehabilitation would certainly benefit the private company, the court found that the suit would also benefit the public. *See Herrmann*, 82 Wn.2d at 5 ("It cannot be denied that the proceeds . . . , if any, will inure to the benefit of the company . . . . But obviously the commissioner is not

authorized to take over the rehabilitation of insurance companies solely for the benefit of such companies."). Under *Herrmann*, shared benefit between a private entity and the State is sufficient to retain the sovereign character of the State's action. *Id.* Sunheaven would be correct to argue that a state action brought *only* for private benefit would not be a sovereign act. *See, e.g., Vinther*, 176 Wash. at 393. However, Sunheaven's actual assertion—that L&I's claim cannot be a sovereign action because Carrera also stands to benefit—is unsupported by Washington law. *See Vinther*, 176 Wash. at 394-95; *Herrmann*, 82 Wn.2d at 5; *Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Constr. Co.*, 165 Wn.2d 679, 687, 202 P.3d 924 (2009) ("In determining whether an action is sovereign or proprietary, . . . [t]he distribution of benefits is irrelevant.").[5]

The State does not act as a "conduit" for private litigants merely because it brings a claim on behalf of a private party. *Vinther*, 176 Wash. at 393. Instead, we

---

[5] Sunheaven argues that L&I's action is "entirely derivative" of Carrera's claim. Pet'rs' Suppl. Br. at 7. In the property law context, this Court has applied the statute of limitations to purely derivative state actions. *See Pacific Nw. Bell Tel. Co. v. Dep't of Revenue*, 78 Wn.2d 961, 964, 481 P.2d 556 (1971). However, the claim in this case arises from L&I's statutory authority to pursue third party actions on behalf of injured workers— it is not purely derivative. *See* RCW 51.24.050; *Herrmann*, 82 Wn.2d at 7-8 ("The fact that the state may be exercising a right derived by assignment . . . is not determinative. . . . [It] arises out of statute . . . [and] is not a purely derivative action."). Assigned third party claims are governed by *Vinther*, which remains good law. *See Herrmann*, 82 Wn.2d at 9-10 (finding no conflict between *Vinther* and *Pacific Northwest Bell Telephone Co.* because the latter case pertains only to escheat actions).

must look to the *"character or nature"* of the action. *Wash. State Major League Baseball Stadium Pub. Facilities Dist.*, 165 Wn.2d at 686. If the action's purpose, at least in part, is to benefit the State or protect the public, we must conclude that the State acts in its sovereign capacity. *See, e.g., Herrmann*, 82 Wn.2d at 5; RCW 4.16.160. In this case, L&I's action in litigating third party negligence claims under the Act benefits the State directly by replenishing the Fund, and benefits the public more generally by helping injured workers maximize their recovery.

The RCW 51.24.050(4) distribution formula provides clear evidence that third party actions by L&I benefit the State. In addition to providing for L&I's legal costs, *see* RCW 51.24.050(4)(a), third party recovery allows L&I to reimburse the Fund for its benefit payments to the worker and reduce or eliminate its future benefits liability. *See id.* at (4)(d), (5). Given that the Act immunizes employers from most civil suits, *see* RCW 51.24.010, it is L&I that typically bears the cost of providing support to injured workers statewide. In short, each dollar recovered from liable third parties keeps a dollar in the Fund, and increasing the solvency of the Fund represents a clear benefit to the State. Indeed, without the distribution formula authorizing L&I to recover from negligent third parties, L&I would be unable to reimburse the Fund for benefits paid even if a successful claim cut off its responsibility for future payments. *See* RCW 51.24.050(4), .060(1).

Third party claims by L&I also benefit the working public. Holding third parties responsible for workplace negligence furthers a core public policy goal underlying the Act, namely improving on the "economically unwise and unfair" common law system previously available to injured workers. RCW 51.04.010; *Vinther*, 176 Wash. at 393 (an action "in furtherance of [the State's] public policy" is sovereign in character). The deterrent effect of workplace safety enforcement also stands to benefit Washington workers by encouraging better compliance with safety regulations. *See, e.g., Herrmann*, 82 Wn.2d at 7 ("[T]he deterrent effect of such proceedings . . . is a factor tending to benefit the public in general."). Ultimately, measures that protect Washington workers also serve the interests of the State. *See* RCW 51.04.010 ("The welfare of the state depends upon . . . the welfare of its wage worker[s].").

In sum, L&I's RCW 51.24.050 claim against Sunheaven is for the shared benefit of Carrera and the State. The State benefits from reimbursing the Fund, enforcing workplace safety laws, and deterring future negligence. Because the public stands to gain some benefit from L&I's third party action, the action is "for the benefit . . . of the state" under RCW 4.16.160, regardless of personal benefit to Carrera. We hold that Sunheaven may not assert the statute of limitations as an affirmative defense to L&I's third party action.

C.      RCW 51.24.050 Authorizes L&I To Seek Both Economic and Noneconomic Damages in a Third Party Action

Having established that L&I's action is exempt from the statute of limitations, we must determine what damages the Act allows L&I to recover from third parties. Sunheaven argues that RCW 51.24.050 authorizes L&I to seek only economic damages, which should be capped at an amount equivalent to L&I's total lien. *See* Pet'rs' Suppl. Br. at 20-23. The Court of Appeals rejected this argument and held that the Act authorizes L&I to recover both economic and noneconomic damages. *See* *Carrera*, 196 Wn. App. at 253 ("[O]n the plain meaning of RCW 51.24.050 . . . L&I is not barred from seeking and recovering damages greater than the amount it may retain."). We agree. Under RCW 51.24.050, L&I may seek recovery of all damages, both economic and noneconomic.

Sunheaven's argument that recovery is limited to economic damages alone relies on inapposite cases and incorrectly interprets RCW 51.24.050. Sunheaven cites *Flanigan*, 123 Wn.2d 418, and *Tobin v. Department of Labor & Industries*, 169 Wn.2d 396, 239 P.3d 544 (2010), for the proposition that RCW 51.24.050 does not authorize L&I to recover noneconomic damages. These cases are unhelpful. Both involve claims brought directly by injured workers under RCW 51.24.060. *See Flanigan*, 123 Wn.2d 418; *Tobin*, 169 Wn.2d 396. By contrast, this case is solely concerned with assigned claims under RCW 51.24.050. In other words, *Flanigan* and *Tobin* address what

portion of a *worker's* initial recovery L&I can claim for itself; neither case addresses what damages the State may seek when L&I itself is the litigating entity.[6]

Furthermore, neither case offers guidance as to what damages L&I can seek from a third party. In *Flanigan*, the court held that L&I could not reimburse itself from a surviving spouse's loss of consortium award. 123 Wn.2d at 426. Loss of consortium is not at issue here because consortium damages are explicitly not recoverable in actions under chapter 51.24 RCW. *See* RCW 51.24.030(5) (defining "recovery" as "includ[ing] all damages except loss of consortium"). In *Tobin*, the court held that L&I could not reimburse itself from the noneconomic damages awarded to an injured worker for his pain and suffering. 169 Wn.2d at 398. Again, this addresses what portion of a worker's recovery under RCW 51.24.060 L&I can *keep*—not what type of damages L&I is itself authorized to *seek* under RCW 51.24.050.

Sunheaven's failure to distinguish between what L&I can recover versus what it can retain is particularly problematic in light of the clear distinction drawn in the statute. The worker, his or her beneficiary, or L&I may bring a claim to recover "damages"

---

[6] There is language in the Court of Appeals' opinion suggesting that the "general reasoning" of *Flanigan* and *Tobin* applies to this case so that L&I "may not retain noneconomic damages in assigned third party actions." *Carrera*, 196 Wn. App. at 250-51. We do not endorse this view because the sole question before this court concerns what damages L&I may seek. Our holding that L&I may bring a claim for both economic and noneconomic damages is based on the plain language of RCW 51.24.050, which governs the distribution of any L&I recovery in an assigned third party action.

from liable third parties. RCW 51.24.030(1), .050. This claim correlates to the single cause of action created by RCW 51.24.030, which defines "recovery" broadly: "'recovery' includes all damages except loss of consortium." RCW 51.24.030(5). There is no alternative definition of "recovery" in RCW 51.24.050, nor is there any indication in the text that the act of assignment constrains the single cause of action.[7] The statutory language is unambiguous: L&I may recover all damages except loss of consortium. *See* RCW 51.24.030(5); *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014) (courts must give effect to a statute's plain meaning when the text is unambiguous).

The statute makes it equally clear that L&I is not authorized to retain all that it may recover. After subtracting L&I's legal costs, any recovery is further reduced by first distributing 25 percent of the remaining funds to the worker. *See* RCW 51.24.050(4)(a)-(b). Only after this distribution can L&I reimburse the Fund. *See id.* at (4)(c). As the Court of Appeals points out, the statutory structure confirms that capping L&I's recovery at the amount of its benefits liability would be illogical. Merely to break even, L&I's recovery must exceed its withdrawals from the Fund by the cost of litigation plus an additional 25 percent. *See Carrera*, 196 Wn. App. at 252.

---

[7] The relevant statutory phrasing in this section refers to L&I's awarded damages in the singular ("*the* recovery"), thus reinforcing the interpretation that RCW 51.24.050 contemplates distribution of a single recovery. RCW51.24.050(4)(a)-(b) (emphasis added).

Simply put, RCW 51.24.050(4) divides L&I's recovery into two categories of recovery it can keep (legal fees and benefits paid) and two categories it cannot keep (25 percent of the initial award and any "remaining balance"). If L&I were not authorized to recover funds it cannot keep, there would be no reason for the legislature to instruct L&I how to dispose of that recovery. Furthermore, the legislature explicitly authorized L&I to reimburse the Fund when either the worker or the State recovers damages from a third party. *See, e.g.,* RCW 51.24.060(1), .050(4). By capping L&I's recovery at the lien amount (i.e., the exact amount required to fully replenish the Fund) before costs and the worker's 25 percent are deducted, Sunheaven's interpretation would guarantee that the Fund would never be fully reimbursed.[8] This interpretation is unsupported by the statute and contrary to legislative intent—we decline to adopt it.

We hold that RCW 51.24.030 and .050 authorize L&I to recover both economic and noneconomic damages. L&I may seek all damages contemplated by RCW 51.24.050, but may retain only its legal costs and economic damages equal to benefits paid to Carrera.

---

[8] As L&I notes, Sunheaven's interpretation would also guarantee that there is never a "remaining balance" to distribute under RCW 51.24.050(4)(d), rendering that step in the distribution formula superfluous. Suppl. Br. of Dep't of Labor & Indus. at 15.

## CONCLUSION

L&I's third party claim against Sunheaven stands to replenish the Fund and further the State's public policy goals. The action is therefore "for the benefit . . . of the state" under RCW 4.16.160 and is exempt from the statute of limitations. In bringing such an action, L&I may seek to recover both economic and noneconomic damages, to be distributed as required by RCW 51.24.050(4). We affirm the Court of Appeals.

Stephens, J.

WE CONCUR:

Fairhurst, C.J.

Wiggins, J.

González, J.

Madsen, J.

Johnson, McCloud, J.

Owens, J.

Yu, J.