[No. 24324. Department Two. February 15, 1934.]

THE STATE OF WASHINGTON, *Appellant,* v. NEWTON VINTHER, *Respondent.*[1]

*The Attorney General* and *Browder Brown, Assistant (V. D. Bradeson,* of counsel), for appellant.

*Danson, Lowe & Danson,* for respondent.

GERAGHTY, J.—This action was brought by the state of Washington to recover from the defendant Vinther an amount equal to the liability imposed upon the accident fund of the state under the workmen's compensation act for the death of Valentine J. McNaught Davis. The complaint alleged that Vinther, by the negligent operation of an automobile on the streets of the city of Spokane, caused the death of Davis, then engaged in an extrahazardous employment; that Davis left surviving him a widow and two minor children;

[1]Reported in 29 P. (2d) 693.

that the widow, for herself and children, elected to take the benefits provided by the workmen's compensation act, pursuant to the provisions of Rem. Rev. Stat., § 7675, and assigned to the state, for the benefit of the accident fund, all rights and causes of action arising out of the accident; that the department of labor and industries allowed her claim; and that the financial obligation assumed by the accident fund was $6,731.35, for which sum a judgment was asked against the defendant.

A demurrer to the complaint was sustained by the trial court upon the ground that the action had not been begun within the time limited by law. The plaintiff refusing to plead further, judgment was entered dismissing the action, from which judgment this appeal is taken.

This action is brought by the appellant under Rem. Rev. Stat., § 7675, which reads in part as follows:

"*Provided, however,* That if the injury to a workman is due to the negligence or wrong of another not in the same employ, the injured workman, or if death result from the injury, his widow, children, or dependents, as the case may be, shall elect whether to take under this act or seek a remedy against such other, such election to be in advance of any suit under this section; and if he take under this act, the cause of action against such other shall be assigned to the state for the benefit of the accident fund; if the other choice is made, the accident fund shall contribute only the deficiency, if any, between the amount of recovery against such third person actually collected, and the compensation provided or estimated by this act for such case: *Provided, however,* That no action may be brought against any employer or any workman under this act as a third person if at the time of the accident such employer or such workman was in the course of any extra-hazardous employment under this act. Any such cause of action assigned to the state may be prosecuted

or compromised by the department, in its discretion. Any compromise by the workman of any such suit, which would leave a deficiency to be made good out of the accident fund, may be made only with the written approval of the department.''

The right of the state to take an assignment and sue under the provisions of this section has been sustained by this court, and is not challenged here by the respondent. The sole question involved is whether the statute of limitations will run against the state in a suit to recover upon an assigned claim. The answer to this question, in turn, is dependent upon the further question whether the state, in suing for the benefit of the accident fund, is acting in its sovereign capacity in furtherance of its public policy, or merely suing in its own name for the benefit of private individuals—the contributors to the accident fund. That the sovereign state can neither be sued nor debarred from suing in its own courts without its consent, is an accepted principle of law, needing no citation of authorities for its support. This is so in the absence of statute, but Rem. Rev. Stat., § 167, specifically provides

''. . . that there shall be no limitation to actions brought in the name or for the benefit of the state, and no claim of right predicated upon the lapse of time shall ever be asserted against the state.''

There is a qualification of the rule exempting the state from the operation of the statute of limitations as well-founded in authority as the rule itself, to the effect that the statute will apply when the state is a mere formal plaintiff in a suit, not for the purpose of asserting any public right or protecting any public interest, but merely to form a conduit through which one private person can conduct litigation against another private person. *United States v. Beebe,* 127 U. S. 338, 8 S. Ct. 1083; *United States v. Fletcher,* 242 Fed. 818.

It is upon this qualification of the general rule that the respondent relies to sustain the judgment of the trial court.

Foregoing, as unnecessary to our decision, any emphasis upon the broad language of the statute, "there shall be no limitation to actions brought in the *name* or for the benefit of the state," the question can be disposed of by application of the general rule. The first section of the workmen's compensation act defines its purpose in the following language:

"The common-law system governing the remedy of workmen against employers for injuries received in hazardous work is inconsistent with modern industrial conditions. In practice it proves to be economically unwise and unfair. Its administration has produced the result that little of the cost of the employer has reached the workman and that little only at large expense to the public. The remedy·of the workman has been uncertain, slow and inadequate. Injuries in such works, formerly occasional, have become frequent and inevitable. The welfare of the state depends upon its industries, and even more upon the welfare of its wage worker. The State of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workmen, injured in extra-hazardous work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this act; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this act provided." Rem. Rev. Stat., § 7673.

After this broad declaration of policy, the act sets up in detail a complete plan for carrying into effect its purposes. In this plan, the remedy provided in § 7675 is an integral part. The act, as a whole, is the exercise

of a governmental function in the fullest sense of the word, having its support in the police power of the state. The contention of the respondent that the accident fund is a private fund, contributed to by private persons, is hardly consistent with the declared purposes of the act, and was disposed of by this court in *State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 203, 117 Pac. 1101, 37 L. R. A. (N. S.) 466. In that case, one of the grounds urged against the constitutionality of the act was that it violated the provisions of the constitution designed to secure equal and uniform taxation of property for public purposes. In meeting this objection, the court said:

"It is manifest that it is not a tax in the sense the word is used in the sections of the Constitution to which reference is here made. No accession to the public revenue, general or local, is authorized or aimed at. The purpose of the exaction is entirely different. It is to be used, not to meet the current expenses of government, but to recompense employees of the industries on whom the burden is imposed for injuries received by them while engaged in the pursuit of their employments. It is the consideration which the owners of the industries pay for the privilege of carrying them on. It is, therefore, in the nature of a license tax, and can be justified on the principle of law that justifies the imposition and collection of license taxes generally."

And, again, in the same case (p. 207):

"The sums exacted from the several industries named we think may be treated as partaking both of the nature of a license for revenue and regulation; as such, however, we find nothing in the principle inimical to either the state or Federal constitutions."

In other words, the accident fund is not made up of sums voluntarily *contributed* by the employers engaged in the industries affected, but is a license fee or tax *exacted* and *imposed* upon the industries in further-

ance of the state's public policy in caring for workmen injured in industry. While the fund is a trust fund, administered by the state for the benefit of injured workmen, it is in no sense a private fund. *State ex rel. Trenholm v. Yelle,* 174 Wash. 547, 25 P. (2d) 569.

While so far we have discussed this case as if it were one of new impression, it is not so; and we think, notwithstanding the earnest argument of respondent to the contrary, that *State v. Cowlitz County,* 146 Wash. 305, 262 Pac. 977, is controlling. In that case, the state sued Cowlitz county on a claim assigned, as here, by a widow and minor children for the death of the husband and father, caused by the collapse of a bridge maintained by the county. A demurrer was interposed to the complaint upon several grounds, one being the statute of limitations, another the failure to file a proper claim with the county, as required by law. The trial court, in a memorandum opinion sustaining the demurrer, held the proviso authorizing suit unconstitutional and unenforcible on technical grounds, and also held that the state was barred by failure of the widow to file a proper claim with the county. The trial judge made no reference in his memorandum opinion to the statute of limitations, although the record showed that the state instituted its suit more than three years after the accident. On appeal here, the lower court was reversed. In disposing of the contention that the widow had failed to file her claim with the county and that the statute of limitations had run, the court said: .

"Finally, it is contended by the respondent that the action cannot be maintained because the claim filed by the widow with the county was not valid and the action was not brought within time. Whether the claim filed by the widow with the county was sufficient is not material. While the basis of the action is negligence, the

state is limited in its recovery by reason of the subrogation authorized by the statute to an amount sufficient to indemnify it for the charge made against the accident fund. Honnold on Workmen's Compensation, vol. 1, § 46, referring to the act of the State of New York which has a provision similar to the act of this state, says:

" ' "Subrogation," within this Act, does not mean substitution, but means rather indemnification, and therefore limits the amount recoverable by the state or insurer to the amount paid on the claim.'

"The state's cause of action is one which arose out of the statute and accrued when the widow elected to take under the act and her claim was approved."

The respondent attempts to distinguish the Cowlitz county case from the case at bar, but we can see no distinction in legal effect. In both cases, the statute of limitations had run. In the Cowlitz county case, the widow had also failed to file her claim with the county. This difference in fact between the two cases involved no difference in principle. The respondent indulges in some verbal criticism of our opinion in the Cowlitz county case. We think the opinion adequately met the issues as they were presented in the briefs and argument.

Our interpretation of the proviso of § 7675 involved here is that, from the time of the accident, the state has an inchoate interest in the subject matter of the claim of a workman injured by a third party, which becomes vested when the beneficiary elects to take under the workmen's compensation act, and that, when the right vests, the state takes as of the time of the accident.

The respondent argues the inconvenience and hardship that will follow a holding that the statute of limitations does not run against the state in actions upon assigned claims, but this argument can be urged with equal force in respect of any other right possessed

by the state, against which the statute of limitations does not run. The question is one of legislative policy.

▉ Of course, it need hardly be said that, while the state takes free from the bar of the statute of limitations, it takes no more than the injured workman or his beneficiary had, and that the defendant will not be precluded from making any defense that would be available against the assignor; in other words, allowance of the claim by the department of labor and industries will not be *res adjudicata* as to the defendant's liability.

We conclude that the lower court was in error in sustaining the demurrer to appellant's complaint, and the judgment will accordingly be reversed and the case remanded, with directions to overrule the demurrer.

BEALS, C. J., BLAKE, TOLMAN, and HOLCOMB, JJ., concur.