

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE **JUL 1 4 2016**

*Madsen C.J.*
CHIEF JUSTICE

This opinion was filed for record
at *8:00 a.m.* on *July 14, 2016*

*[signature]*

**Supreme Court Clerk**

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

THE STATE OF WASHINGTON, )
)
Respondent, )   No. 91263-7
)
v. )
)
LG ELECTRONICS, INC.; LG )
ELECTRONICA U.S.A., INC.; )
KONINKLIJKE PHILIPS )
ELECTRONICS N.V. A/K/A ROYAL )
PHILIPS ELECTRONICS NORTH )
AMERICA CORPORATION; TOSHIBA )
CORPORATION; TOSHIBA AMERICA )   En Banc
ELECTRONIC COMPONENTS, INC.; )
HITACHI, LTD.; HITACHI DISPLAYS, )
LTD.; HITACHI ELECTRONIC DEVICES )
(USA), INC.; and HITACHI ASIA, LTD., )
)
Petitioners, )
)
and )
)
PHILIPS ELECTRONICS INDUSTRIES )
(TAIWAN), LTD.; SAMSUNG SDI CO., )
LTD. F/K/A SAMSUNG DISPLAY )
DEVICE CO., LTD.; SAMSUNG SDI )   Filed **JUL 1 4 2016**
AMERICA, INC.; SAMSUNG SDI )
MEXICO S.A. DE C.V.; SAMSUNG SDI )
BRASIL LTDA.; SHENZHEN SAMSUNG )
SDI CO., LTD.; TIANJIN SAMSUNG SDI )
CO., LTD.; SAMSUNG SDI (MALAYSIA) )

SDN. BHD.; MT PICTURE DISPLAY CO.,)
LTD.; PANASONIC CORPORATION        )
F/K/A MATSUSHITA ELECTRIC          )
INDUSTRIAL CO., LTD.; PANASONIC    )
CORPORATION OF NORTH AMERICA;  )
CHUNGHWA PICTURE TUBES LTD.;    )
CPTF OPTRONICS CO. LTD.; and       )
CHUNGHWA PICTURE TUBES             )
(MALAYSIA) SDN. BHD.,              )
                                   )
                Defendants.        )
                _____ )

GONZÁLEZ, J.—Plaintiffs must file their lawsuits before the applicable statute of limitations runs or their suits will be dismissed as untimely. Historically, sovereigns were not subject to statutes of limitations without their explicit consent. Washington State has consented to some statutes of limitations but not to others. We are asked to decide whether our State has consented to a statute of limitations that would bar this antitrust suit filed by the Washington State attorney general on behalf of the State against more than 20 foreign electronics manufacturing companies. We find it has not and affirm.

## FACTS

On May 1, 2012, the State, through the attorney general, filed suit on behalf of itself and as parens patriae[1] on behalf of persons residing in the

---

[1] "Parens patriae," literally "'parent of his or her country,'" refers traditionally to the role of the state as sovereign. BLACK'S LAW DICTIONARY 1287 (10th ed. 2014).

state against a number of foreign electronics manufacturers. Clerk's Papers (CP) at 1-28. The State alleges that between at least March 1, 1995, through at least November 25, 2007, the defendants violated RCW 19.86.030, which prohibits any "contract, combination . . . or conspiracy in restraint of trade or commerce," by agreeing to raise prices and agreeing on production levels in the market for CRTs (cathode ray tubes), the dominant display technology used in televisions and computer monitors before the advent of LCD (liquid crystal display) panels and plasma display technologies. *Id.* at 1, 2, 24, 27. Due to this unlawful conspiracy, the State alleges, Washington consumers and the State of Washington itself paid supracompetitive prices for CRT products. *Id.* at 14. The complaint seeks "damages, restitution, civil penalties, costs and fees, and injunctive relief." *Id.* at 2, 27-28.

Ten of the defendants filed a motion to dismiss, arguing the claims were time barred because Washington's Consumer Protection Act (CPA), chapter 19.86 RCW, provides that actions for damages under RCW 19.86.*090* must be brought within four years. CP at 29-59 (citing RCW 19.86.120). The State responded that RCW 19.86.120's statute of limitations did not apply to its claims under RCW 19.86.080. *Id.* at 46. The State also argued that it was exempt from the statute of limitations under RCW 4.16.160, which provides that "there shall be no limitation to actions

3

brought in the name or for the benefit of the state." *Id.* at 48. The trial judge

denied the motion to dismiss and certified the matter for discretionary

review under RAP 2.3(b)(4).[2] *Id.* at 95-96, 144. The Court of Appeals

granted discretionary review of two questions:

> "(1)Whether the four-year statute of limitations under RCW
> 19.86.120 applies to the Washington's Attorney General's Complaint
> brought pursuant to its *parens patriae* authority under RCW
> 19.86.080 that seeks actual damages for violations of RCW
> 19.86.030?

> "(2) Whether RCW 4.16.160 should be applied to the
> Washington Attorney General's *parens patriae* antitrust lawsuit
> seeking actual damages and restitution for citizens of Washington?"

*State v. LG Elecs., Inc.*, 185 Wn. App. 123, 130, 340 P.3d 915 (2014)

(footnotes omitted).

The Court of Appeals concluded that the CPA's four-year statute of

limitations did not apply to actions for injunctive relief and restitution

brought by the attorney general under RCW 19.86.080 (.080) because it

expressly applies only to actions for damages under RCW 19.86.090. *Id.* at

139. It also concluded the State's .080 action was "brought for the benefit of

---

[2] RAP 2.3(b)(4) provides discretionary review of a trial court decision may be accepted
when

> [t]he superior court has certified, or all the parties to the litigation have stipulated,
> that the order involves a controlling questioning of law as to which there is
> substantial ground for a difference of opinion and that immediate review of the
> order may materially advance the ultimate termination of the litigation.

the State" and thus exempt from any general statute of limitations under RCW 4.16.160, and affirmed the trial court. *Id.* at 151. The defendants who moved to dismiss (collectively LG Electronics) successfully petitioned for our review.

ANALYSIS

Our review is de novo. *Burton v. Lehman*, 153 Wn.2d 416, 422, 103 P.3d 1230 (2005) (CR 12(b)(6) rulings) (citing *Tenore v. AT & T Wireless Servs.*, 136 Wn.2d 322, 329-30, 962 P.2d 104 (1998)); *Castro v. Stanwood Sch. Dist.*, 151 Wn.2d 221, 224, 86 P.3d 1166 (2004) (interpretation of a statute) (citing *State v. Karp*, 69 Wash. App. 369, 372, 848 P.2d 1304 (1993)).

The CPA authorizes both public and private enforcement of its provisions. RCW 19.86.080, .090. Under .080, the attorney general is authorized to bring an action "in the name of the state, or as parens patriae on behalf of persons residing in the state" for injunctive relief, and the court is authorized to make "additional orders . . . as may be necessary to restore to any person in interest any moneys or property . . . which may have been acquired by means of [a prohibited] act." RCW 19.86.080(1), (2). RCW 19.86.080 directs the court to consider consolidating .080 actions with other related actions and to exclude from the amount of monetary relief awarded

5

any amount that duplicates amounts already awarded for the same violation. RCW 19.86.080(3).

RCW 19.86.090 (.090) authorizes private persons to sue for injunctive relief and "actual damages," and it provides the court with discretion to increase the award of damages up to three times the actual damages sustained. It also authorizes the State, "[w]henever [it] is injured, directly or indirectly," by a violation of the act to sue for its "actual damages." The CPA's statute of limitations provision bars "claim[s] for damages under RCW 19.86.090" if not commenced within four years. RCW 19.86.120.

LG Electronics ask us to find that the State's .080 parens patriae claim for injunctive relief and restitution is barred by RCW 19.86.120, the CPA's statute of limitations for .090 damages claims. Alternatively, they contend that one of the general statutes of limitations in chapter 4.16 RCW applies: the catchall three-year statute of limitations for actions seeking recovery for "any other injury to the person or rights of another," RCW 4.16.080(2), or the even broader catchall two-year limitations period for "[a]n action for relief not hereinbefore provided," RCW 4.16.130. Suppl. Br. of Pet'rs at 13-14. We find that by its plain language, RCW 19.86.120 does not apply to .080 claims. We also find that the State's action is not subject to the general statutes of limitation because RCW 4.16.160, which codifies the common

6

law *nullum tempus*[3] doctrine, applies. Under the *nullum tempus* doctrine, statutes of limitations do not run against the State unless the State expressly consents to the limitation on its sovereign powers.[4]

*I.     The CPA's Statute of Limitations Does Not Apply to the State's .080 Claims*

Reading the CPA as a whole, we conclude that the four-year statute of limitations of RCW 19.86.120 (.120) does not apply to .080 actions. First, by its plain language, .120 applies only to claims for damages under .090, which are distinct from claims under .080. Under the age old rule expressio unius est exclusio alterius, "'[w]here a statute specifically designates the things upon which it operates, there is an inference that the Legislature intended all omissions.'" *In re Pers. Restraint of Hopkins*, 137 Wn.2d 897, 901, 976 P.2d 616 (1999) (alteration in original) (quoting *Queets Band of Indians v. State*, 102 Wn.2d 1, 5, 682 P.2d 909 (1984)); *Wash. Nat. Gas Co.*

---

[3] The common law doctrine "'*nullum tempus occurrit regi*'" means "no time runs against the King." Sigmund D. Schutz, *Time to Reconsider* Nullum Tempus Occurrit Regi—*The Applicability of Statutes of Limitations against the State of Maine in Civil Actions*, 55 ME. L. REV. 373, 374 (2003).

[4] We stress that our opinion is limited to the attorney general's .080 claims. The attorney general's complaint broadly requested injunctive relief, damages, restitution, civil penalties, and attorney fees, and the State subsequently specified that it seeks damages on behalf of state agencies that were purchasers of CRT products under .090, restitution for state consumers under .080, and civil penalties under RCW 19.86.140. CP at 2, 27-28; State's Resp. at 2. The Court of Appeals addressed only whether the State's .080 claim for injunctive relief and restitution is subject to a statute of limitations and declined to consider whether the .090 and .140 claims were untimely, concluding those issues were beyond the scope of the certified questions it granted for review. *LG Elecs., Inc.*, 185 Wn. App. at 151.

*v. Pub. Util. Dist. No. 1 of Snohomish County*, 77 Wn.2d 94, 98, 459 P.2d 633 (1969).

Second, we note that legislative history supports the conclusion that the legislature intentionally excluded .080 claims from the limitations period in .120. In its original form, the CPA authorized the State to seek injunctive relief under .080 and authorized damages actions by both private parties and the State under .090. LAWS OF 1961, ch. 216, §§ 8, 9. The act provided a statute of limitations for "claim[s] for damages under [.090]," but did not reference .080 actions. LAWS OF 1961, ch. 216, § 12 (codified at RCW 19.86.120). In 1970, the legislature amended .080 to provide the court discretion to award monetary restitution pursuant to a state action for injunctive relief. LAWS OF 1970, 1st Ex. Sess., ch. 26, § 1. Again in 2007, the legislature amended .080 to add the language "or as parens patriae on behalf of persons residing in the state" and to expressly provide that for certain violations of the act, restitution may be awarded to persons in interest regardless of whether they were direct or indirect consumers of goods. LAWS OF 2007, ch. 66, § 1. Significantly, although the legislature also amended .120 in 1970 in other ways not relevant to this case, it has never amended it to encompass .080 claims. *See* LAWS OF 1970, 1st Ex. Sess., ch. 26, § 5. We decline to find that the legislature was absent minded, and

8

instead we follow our long standing precedent that in such circumstances, "'the silence of the Legislature is telling' and must be given effect." *Hopkins*, 137 Wn.2d at 901 (quoting *Queets Band of Indians*, 102 Wn.2d at 5).

LG Electronics argues that a four-year limitations period applies because the legislature explicitly directed courts to construe the CPA in harmony with federal antitrust statutes, and under federal law, claims brought by state attorneys general are subject to a four-year limitations period. 15 U.S.C. §§ 15b, 15c. While the CPA directs courts interpreting the act to "be guided by final decisions of the federal courts . . . interpreting the various federal statutes dealing with the same or similar matters," RCW 19.86.920, we have declined to follow federal law where the language and structure of the CPA departs from otherwise analogous federal provisions. *See, e.g., State v. Black*, 100 Wn.2d 793, 799, 802-03, 676 P.2d 963 (1984). While the CPA, like the Clayton Act, 38 Stat. 730 (1914), permits the state attorney general to bring a parens patriae action, the statutory parallel turns perpendicular at that point and so the federal statute dealing with limitations periods is not a helpful guide here. The federal Clayton Act authorizes state attorneys general to sue for treble damages for persons injured in their business or property under 15 U.S.C. § 15c. The Clayton Act's four-year

statute of limitations provision expressly applies to actions brought pursuant to 15 U.S.C. § 15c. In contrast, the Washington Legislature authorized the attorney general to enjoin violations of the act and to recover money or property as restitution under .080, and in a separate statutory provision, .090, authorized treble damages claims by private persons for injuries to business and property and by the State for its direct and indirect injuries. The language of this statute of limitations includes only actions brought under .090.

LG Electronics also urges us to find the four-year limitations period applies because there is "significant overlap" between .080 and .090 claims. Suppl. Br. of Pet'rs at 14-15. Petitioners posit that actions brought under .080 challenge "*identical* conduct by *identical* defendants as would an [.]090 damages claim expressly governed by the [.]120 limitations period" and so under *Eastwood v. Cascade Broadcasting Co.*, 106 Wn.2d 466, 469, 722 P.2d 1295 (1986), "[i]t is anomalous to treat those claims so differently for limitations purposes." *Id.* at 15. But in *Eastwood* we were asked to decide if the statute of limitations for "libel" and "slander" (defamation claims) encompassed false light invasion of privacy claims, which could be brought by the same plaintiff against the same defendant for the same conduct. 106 Wn.2d at 469. We analyzed the similarities between the elements of false

light and defamation claims and concluded that "the theoretical difference between the two torts is that a defamation action is primarily concerned with compensating the injured party for damage to reputation, while an invasion of privacy action is primarily concerned with compensating for injured feelings or mental suffering[, but] [t]he two torts overlap . . . when the statement complained of is both false and defamatory." *Id.* at 470-71. Thus, we concluded that where the facts in the false light case also give rise to a defamation claim, a plaintiff cannot avoid the two-year limitations period by characterizing it as a false light claim for statute of limitations purposes. *Id.* at 469. Here, however, RCW 19.86.120 expressly includes .090 claims only, which are qualitatively different from .080 claims, which can be brought only by the attorney general. The statute simply cannot be read to encompass .080 claims, and so *Eastwood* is not helpful.

We cannot ignore the plain language of the statute or the relevant history that produced it. The legislature has expressly instructed that the State shall not be subject to the policies of preventing stale claims inherent in statutes of limitations because of competing policy considerations regarding the public welfare and the State's purse. RCW 4.16.160.

II.     *The State's .080 Action Is Encompassed by RCW 4.16.160*

At common law, statutes of limitations did not run against the State

under the old *nullum tempus* doctrine. *Bellevue Sch. Dist. No. 405 v. Brazier Constr. Co.*, 103 Wn.2d 111, 114, 691 P.2d 178 (1984) (quoting *United States v. Thompson*, 98 U.S. (8 Otto) 486, 489-90, 25 L. Ed. 194 (1878)). The Washington Legislature codified the common law *nullum tempus* doctrine more than 100 years ago. *Id.* at 115 (citing LAWS OF 1903, ch. 24, § 1). RCW 4.16.160 provides:

> The limitations prescribed in this chapter shall apply to actions brought in the name or for the benefit of any county or other municipality or quasimunicipality of the state, in the same manner as to actions brought by private parties: *PROVIDED, That . . . there shall be no limitation to actions brought in the name or for the benefit of the state,* and no claim of right predicated upon the lapse of time shall ever be asserted against the state.

(Emphasis added.)

The *nullum tempus* doctrine is related to the doctrine of sovereign immunity and the age-old principle that the sovereign's rules do not bind the sovereign itself unless the sovereign explicitly consented to be bound:

> "The common law fixed no time as to the bringing of actions. Limitations derive their authority from statutes. The king was held never to be included, unless expressly named. No laches was imputable to him. These exemptions were founded upon considerations of public policy. It was deemed important that, while the sovereign was engrossed by the cares and duties of his office, the public should not suffer by the negligence of his servants. 'In a representative government, where the people do not and cannot act in a body, where their power is delegated to others, and must of necessity be exercised by them, if exercised at all, the reason for applying these principles is equally cogent.'

"When the colonies achieved their independence, each one took these prerogatives, which had belonged to the crown; and when the national Constitution was adopted, they were imparted to the new government as incidents of the sovereignty thus created. It is an exception equally applicable to all governments."

*Bellevue Sch. Dist. No. 405*, 103 Wn.2d at 114 (quoting *Thompson*, 98 U.S. at 489-90); *see State v. Vinther*, 176 Wash. 391, 393, 29 P.2d 693 (1934). Thus, unless there is an express provision to the contrary, no statute of limitations applies to actions in the name of or for the benefit of the State. *Bellevue Sch. Dist. No. 405*, 103 Wn.2d at 120. We find that the attorney general's .080 action is "in the name of or for the benefit of the state" for the purposes of RCW 4.16.160.

We have embraced the common law principle that where the State "is a mere formal plaintiff in a suit, not for the purpose of asserting any public right or protecting any public interest, but merely to form a conduit through which one private person can conduct litigation against another private person," it is not immune from statutes of limitation under RCW 4.16.160. *Vinther*, 176 Wash. at 393 (citing *United States v. Beebe*, 127 U.S. 338, 8 S. Ct. 1083, 32 L. Ed. 121 (1888)); *Herrmann v. Cissna*, 82 Wn.2d 1, 4-5, 507 P.2d 144 (1973) (quoting *Wasteney v. Schott*, 58 Ohio St. 410, 51 N.E. 34 (1898)). Thus, we have looked beyond simply whether the action is brought in the name of the State to the character and nature of the action, examining

whether an action is for the purpose of protecting the public interest. *Vinther*, 176 Wash. at 393-96; *Herrmann*, 82 Wn.2d at 5-6; *see Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt, & Nichols-Kiewit Constr. Co.*, 165 Wn.2d 679, 202 P.3d 924 (2009).

LG Electronics argues that the nature and character of the State's .080 action is not for the purpose of protecting the public's interest within the meaning of RCW 4.16.160. They characterize the action as one enforcing a private or individual right because the State seeks monetary restitution for Washington consumers. *See* Suppl. Br. of Pet'rs at 11. But we have found state action may be exempt from limitations periods even when identifiable individuals may privately benefit from the state action. *E.g.*, *Vinther*, 176 Wash. at 394-95; *Herrmann*, 82 Wn.2d at 5; *see Wash. State Major League Baseball Stadium*, 165 Wn.2d at 697 ("The . . . language in RCW 4.16.160 is properly understood to refer to the character or nature of municipal conduct rather than its effect." (citing *Wash. Pub. Power Supply Sys. v. Gen. Elec. Co.*, 113 Wn.2d 288, 293, 778 P.2d 1047 (1989))).

In *Vinther* and *Herrmann*, we rejected arguments that state actions were subject to limitations periods merely because private individuals would benefit. Instead, we looked primarily to the statutory provisions that authorized the actions to determine whether they were for the benefit of the

public generally, even if private individuals might benefit specifically. In *Vinther* we considered whether the statute of limitations ran against the State in a suit to recover under workers' compensation laws. We turned to the workers' compensation act's declaration of purpose, which provided, "'The remedy of the workman has been uncertain, slow, and inadequate. Injuries in such works, formerly occasional, have become frequent and inevitable. The welfare of the state depends upon its industries, and even more upon the welfare of its wage worker.'" *Vinther*, 176 Wash. at 394 (quoting Rem. Rev. Stat. § 7673). We concluded that "the act, as a whole, is the exercise of a governmental function in the fullest sense of the word, having its support in the police power of the state." *Id.* at 394-95. Thus the State was not "merely suing in its own name for the benefit of private individuals—the contributors to the accident fund," but rather was "acting in its sovereign capacity in furtherance of its public policy." *Id.* at 393.

Subsequently, in *Herrmann*, we considered an action by the insurance commissioner in his capacity as statutory rehabilitator of an insurer against former officers and directors of the defunct insurer for losses due to negligence or fraud. 82 Wn.2d at 1. We found that although the proceeds of the commissioner's suit "will inure to the benefit of the company and its policyholders," it was "obvious [] [that] the commissioner is not authorized

15

to take over the rehabilitation of insurance companies solely for the benefit of such companies, their shareholders, or policyholders." *Id.* at 5. Because "[t]he legislature clearly had in mind, in enacting the insurance code, that such actions on the part of the commissioner would benefit the public generally," we rejected the contention that the suit was brought merely to enforce a private right. *Id.*

Here, although consumers may benefit from restitution, the legislature clearly intended for the attorney general's enforcement under .080 to benefit the public generally. The CPA's purpose is to "protect the public and foster fair and honest competition," RCW 19.86.920, and when the attorney general brings a CPA action, "he acts for the benefit of the public," *Lightfoot v. MacDonald*, 86 Wn.2d 331, 334, 544 P.2d 88 (1976). "The Attorney General's responsibility in bringing cases of this kind is to protect the public from the kinds of business practices which are prohibited by the statute; it is not to seek redress for private individuals." *Seaboard Sur. Co. v. Ralph Williams' Nw. Chrysler Plymouth, Inc.*, 81 Wn.2d 740, 746, 504 P.2d 1139 (1973). Just like administering workers' compensation and regulating insurance, safeguarding the public by prohibiting business practices that undermine fair and honest competition is well within the State's police power.

Petitioners argue there is nothing inherently sovereign about the State's parens patriae action enforcing antitrust laws. Suppl. Br. of Pet'rs at 8-12. Petitioners rely on a federal case, *California v. Frito-Lay, Inc.*, where the Ninth Circuit concluded that the State of California did not meet federal parens patriae standing requirements (which permit a state to sue in federal court on behalf of its citizens to protect certain quasi-sovereign interests of the state) to sue for treble damages for its citizen-consumers under the federal Clayton Act. 474 F.2d 774, 777-78 (9th Cir. 1973). The petitioners do not argue that the analysis of federal courts under the parens patriae federal standing doctrine is coextensive with our inquiry about the character and nature of the State's action under state law. Moreover, it appears that federal law as it stands today recognizes that a "state's interest in preventing harm to its citizens by antitrust violations is, indeed, a prime instance of the interest that the *parens patriae* can vindicate by obtaining damages and/or an injunction." *In re Ins. Antitrust Litig.*, 938 F.2d 919, 927 (9th Cir. 1991). In considering state claims brought for violations of the Sherman Act, post-*Frito-Lay*, the Ninth Circuit concluded it is well established

> [t]hat a state as *parens patriae* may sue to redress a violation of the antitrust laws . . . *Georgia v. Pennsylvania R.[R.] Co.*, 324 U.S. 439, 450-51, 65 S. Ct. 716, L. Ed. 1051 (1945) (conspiracy in violation of antitrust laws is a wrong "of grave public concern in which Georgia has an interest apart from that of particular individuals who may be affected.") There must, of course, be antitrust injury for

17

an injunction to be granted. Each state here asserts its "quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general." *Alfred v. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607, 102 S.Ct. 3260, 3269, 73 L.Ed.2d 995 (1982). That interest makes each state "more than a nominal party." *Id.*

*Id.* (citation omitted); *see Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 670-71 (9th Cir. 2012) (finding that the State of Nevada's parens patriae consumer protection action was not removable from the state court under the federal Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711-1715, because the State of Nevada, rather than individual consumers, was the real party in interest, noting that "Nevada brought this suit pursuant to its statutory authority . . . because of its interest in protecting the integrity of mortgage loan servicing. . . . Nevada has been particularly hard-hit by the current mortgage crisis, and has a specific, concrete interest in eliminating any deceptive practices that may have contributed to its cause.") (citing *Wash. v. Chimei Innolux Corp.*, 659 F.3d 842 (9th Cir. 2011)). Petitioners provide no support for their argument that the antitrust enforcement function must be exclusively delegated to the State in order for us to find the State's action arises from its sovereign powers.

We are not persuaded that by amending .080 in 2007 to provide the attorney general may bring an action in the name of the State, "or as parens patriae on behalf of persons residing in the state," the legislature intended to

18

distinguish a parens patriae claim from one brought in the name of the State for the purposes of excluding it from RCW 4.16.160. LAWS OF 2007, ch. 66 § 1; Suppl. Br. of Pet'r at 4-5. Nor are we convinced that the legislature's use of the words *"on behalf of persons residing in the state"* evinces the legislature's acknowledgment that parens patriae restitution claims benefit particular persons and not the state as a whole. RCW 19.86.080(1) (emphasis added). Not only does reading this intent into the legislature's word choice strain logic, but to resolve the case on such a basis would be at odds with our approach which has been to probe the nature and character of the action.

We find that under the specific provisions of RCW 4.16.160, in the absence of an express statute to the contrary, the attorney general's suit for injunctive relief and restitution pursuant to .080 is immune from limitations periods. Thus none of the general statutes of limitations in chapter 4.16 RCW apply.

CONCLUSION

We hold that when the attorney general enforces antitrust laws under RCW 19.86.080, he or she acts "in the name of or for the benefit of the state" within the meaning of RCW 4.16.160. In the absence of an express statute to the contrary, the State's action for injunctive relief and restitution

19

pursuant to .080 is exempt from the statute of limitations in RCW 19.86.120

and from the general statutes of limitations in chapter 4.16 RCW. We affirm

the courts below and remand to the trial court for further proceedings

consistent with this opinion.

Gonzáles, J.

WE CONCUR:

Johnson, J.

Wiggins, J.

Owens, J.

Yu, J.

Fairhurst, J.

Hunt, J.P.T.

No. 91263-7

GORDON McCLOUD, J. (concurring in part and dissenting in part)—The Washington State Attorney General's Office filed this parens patriae action on May 1, 2012, over 17 years after the alleged CRT[1] price-fixing conspiracy began and over four years after he learned about it. Clerk's Papers (CP) at 2, 26, 32 n.1, 58. He filed it for the benefit of certain private parties: the millions of Washington residents who indirectly purchased products (like televisions) with CRT components inside. The complaint also references a handful of residents who directly purchased CRTs unincorporated into a useable consumer product. CP at 1-2. The handful of direct purchasers for whose benefit the State filed could not have brought this action themselves: their claims for damages under RCW 19.86.090 were likely time barred by RCW 19.86.120's four-year statute of limitations. The main beneficiaries of this action—the indirect purchasers—could not have filed this action for themselves

---

[1] CRTs (cathode ray tubes) are a form of display technology that was widely used in televisions and computer monitors until the introduction of liquid crystal display (LCD) and light-emitting diode (LED) displays.

1

either: their claims would face not only RCW 19.86.120's four-year time bar but also the Consumer Protection Act's (CPA), chapter 19.86 RCW, bar on private indirect purchaser claims.[2] In this case, we consider whether the State can circumvent this statutory framework by bringing these otherwise time barred and unauthorized indirect claims through a parens patriae action under RCW 19.86.080. The statutory scheme compels us to answer no. I therefore respectfully dissent.

INTRODUCTION

Of the 24 jurisdictions that have authorized their attorneys general to bring parens patriae actions,[3] 18 jurisdictions expressly require that these claims be commenced within four years of accrual.[4] Washington, Connecticut, Oregon, and

---

[2] *Compare* RCW 19.86.080(3) (permitting the State to file claims on behalf of private indirect purchasers), *with* RCW 19.86.090 (denying indirect purchasers the same private right of action).

[3] *See* 15 U.S.C. § 15c(a)(1); ALASKA STAT. § 45.50.577(b); ARK. CODE ANN. § 4-75-315(b); CAL. BUS. & PROF. CODE § 16760(a)(1); COLO. REV. STAT. § 6-4-111(3)(a); CONN. GEN. STAT. § 35-32; DEL. CODE ANN. tit. 6, § 2108(b); D.C. CODE § 28-4507(b); FLA. STAT. § 542.22(2); HAW. REV. STAT. § 480-14(b); IDAHO CODE § 48-108(2); 740 ILL. COMP. STAT. 10 / 7; MD. CODE ANN., Commercial Law § 11-209(b)(5); MASS. GEN. LAWS ch. 93, § 9; NEV. REV. STAT. § 598A.160(1); N.H. REV. STAT. ANN. § 356:4-a(II); OKLA. STAT. tit. 79, § 205(A)(1); OR. REV. STAT. § 646.775(1)(a); 6 R.I. GEN. LAWS § 6-36-12(a); S.D. CODIFIED LAWS §§ 37-1-32, 37-1-14.2; UTAH CODE ANN. § 76-10-3108(1); VA. CODE ANN. § 59.1-9.15(d); RCW 19.86.080; W. VA. CODE § 47-18-17(a).

[4] *See* 15 U.S.C. § 15b; ALASKA STAT. § 45.50.588; CAL. BUS & PROF. CODE § 16750.1; COLO. REV. STAT. § 6-4-118(1); DEL. CODE ANN. tit. 6 § 2111; D.C. CODE § 28-4511(b); FLA. STAT. § 542.56(1); IDAHO CODE § 48-115(1); 740 ILL. COMP. STAT. 10 / 7; MD. CODE ANN., Commercial Law § 11-209(d)(1); MASS. GEN. LAWS ch. 93, § 13; NEV.

2

Virginia, however, lack such express time limits for parens patriae actions. The certified questions[5] in this case ask us to determine whether parens patriae actions brought under RCW 19.86.080 are subject to the same four-year statute of limitations (of RCW 19.86.120) as private direct purchaser claims brought under RCW 19.86.090, or are instead exempt from general statutes of limitations by application of RCW 4.16.160. *See* CP at 145.

I agree with the majority's conclusion that RCW 19.86.120's time bar is inapplicable to RCW 19.86.080 claims. But I disagree with the majority's conclusion that the legislature gave the attorney general the authority to circumvent all statutes of limitations by authorizing him or her to sue "as parens patriae on *behalf of persons residing in the state.*" RCW 19.86.080(1) (emphasis added). On the contrary, it is well settled that the State cannot avoid statutory time bars by lending

---

REV. STAT. § 598A.220(2); N.H. REV. STAT. ANN. § 356:12(I); OKLA. STAT. tit. 79, § 205(C); 6 R.I. GEN. LAWS § 6-36-23; S.D. CODIFIED LAWS § 37-1-14.4; UTAH CODE ANN. § 76-10-3117(1); W. VA. CODE § 47-18-11. *But see* ARK. CODE ANN. § 4-75-320 (five years); HAW. REV. STAT. § 480-14(b) (eight years).

[5] The trial court certified two questions: "(1) Whether the four-year statute of limitations under RCW 19.86.120 applies to the Washington[] Attorney General's Complaint brought pursuant to its *parens patriae* authority under RCW 19.86.080 that seeks actual damages for violations of RCW 19.86.030? [and] (2) Whether RCW 4.16.160 should be applied to the Washington Attorney General's *parens patriae* antitrust lawsuit seeking actual damages and restitution for citizens of Washington?" CP at 145. Notably, the certified questions do not ask us to determine what statute of limitations would apply in the instance we find, as I do, that neither RCW 19.86.120 nor RCW 4.16.160 apply.

3

its name to otherwise time-barred private claims. RCW 4.16.160, which exempts the State from time limits on certain claims, is therefore limited to actions brought "in the name or for the benefit of the state." This parens patriae action does not fall into either category. It was brought under RCW 19.86.080, and that statute states that parens patriae actions are not brought "in the name of the state" or "for the benefit of the state," but to vindicate individual claims "on behalf of persons residing in the state." I therefore agree with the majority's answer to the first certified question: RCW 19.86.120's four-year time bar does not apply here. But I disagree with its answer to the second certified question. I would hold that RCW 4.16.160's exemption does not apply here, either.

## ANALYSIS

Statutory interpretation is a question of law reviewed de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761-62, 317 P.3d 1003 (2014). "In construing a statute, our paramount duty is to ascertain and give effect to the intent of the Legislature." *Wash. Pub. Power Supply Sys. v. Gen. Elec. Co.*, 113 Wn.2d 288, 292, 778 P.2d 1047 (1989) (citing *Addleman v. Bd. of Prison Terms & Paroles*, 107 Wn.2d 503, 509, 730 P.2d 1327 (1986)).

Where possible, we must give effect to the plain meaning of a statute as an expression of legislative intent. *Jametsky*, 179 Wn.2d at 762. "[W]e do not look at

[the] words alone, but 'all [of] the terms and provisions of the act in relation to the subject of the legislation, the nature of the act, [and] the general object to be accomplished and consequences that would result from construing the particular statute in one way or another.'" *BAC Home Loans Servicing, LP v. Fulbright*, 180 Wn.2d 754, 766, 328 P.3d 895 (2014) (second and third alterations in original) (internal quotation marks omitted) (quoting *Burns v. City of Seattle*, 161 Wn.2d 129, 146, 164 P.3d 475 (2007)). We interpret a statute to give effect to all its language and to leave no portion meaningless or superfluous. *Citizens All. for Prop. Rights Legal Fund v. San Juan County*, 184 Wn.2d 428, 440, 359 P.3d 753 (2015). If we find after examination that a statute is subject to more than one reasonable interpretation, then we may use statutory construction, legislative history, and relevant case law to help discern legislative intent. *Jametsky*, 179 Wn.2d at 762.

   A.   *The Legislature Amended RCW 19.86.080 in 2007 To Allow the Attorney General To Bring Parens Patriae Claims "On Behalf of Persons Residing in the State"*

The two certified questions before us involve the scope of the attorney general's authority to bring parens patriae actions "on behalf of" others under RCW 19.86.080(1). Some background regarding the development of parens patriae claims is therefore necessary to interpret the key statutes at issue here.

RCW 19.86.080 was originally enacted in 1961. It authorized the attorney general "to bring an action in the name of the state against any person to restrain and prevent the doing of any act herein prohibited or declared to be unlawful" under the CPA. LAWS OF 1961, ch. 216, § 8. Notably, at that time, the attorney general lacked statutory parens patriae authority.

In 2007, the legislature amended the statute to allow the attorney general to bring actions "in the name of the state, or as parens patriae on behalf of persons residing in the state." LAWS OF 2007, ch. 66, § 1(1) (underlined language added by 2007 amendment). The legislature also authorized the trial court to "make such additional orders or judgments as may be necessary to restore to any person in interest any moneys or property, real or personal, which may have been acquired, regardless of whether such person purchased or transacted for goods or services directly with the defendant or indirectly through resellers." LAWS OF 2007, ch. 66, § 1(3).[6]

The 2007 amendments served an important purpose. They were introduced in the legislature at the behest of the attorney general. *History of Bill: SB 5228*, app.leg.wa.gov/dlr/billsummary/default.aspx?year=2007&bill=5228 [https://perma.cc/19XB2-CHXQ]. That year, he was involved in a multistate action

---

[6] This court's answers to the certified questions do not compel a trial court to award restitution. RCW 19.86.080(3) leaves that decision to the discretion of the trial court.

against manufacturers of dynamic random access memory (DRAM), seeking damages on behalf of indirect purchasers of DRAM products. *State v. Infineon Techs. AG*, 531 F. Supp. 2d 1124 (N.D. Cal. 2007). The defendants moved to dismiss these indirect purchaser claims on the ground that the statute precluded the attorney general from seeking relief on behalf of indirect purchasers. *Id.* at 1140, 1151-54 (citing as the basis for this argument the United States Supreme Court's decision in *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 728, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977), which held indirect purchaser claims were too attenuated to proceed under federal antitrust law). The 2007 amendments addressed this argument: for the first time, the legislature provided the attorney general with express statutory authority to pursue claims on behalf of indirect purchasers under Washington law. *See, e.g.,* WASH. STATE HOUSE OF REPRESENTATIVES, OFFICE PROGRAM RESEARCH, JUDICIARY COMM., SSB 5228, at 2, lawfilesext.leg.wa.gov/biennium/2007-08/Pdf/Bill%20Reports/House/5228-S.HBA%2007.pdf [https://perma.cc/7AD3-GMMF] (H.R. REP. SSB 5228).

Notably, the legislature did not authorize indirect purchasers to bring private claims under RCW 19.86.090 themselves. Private actions under RCW 19.86.090 therefore remained limited to direct purchasers only.

The legislature also declined to amend RCW 19.86.120's four-year statute of limitations to include the attorney general's newly authorized indirect purchaser claims. This absence of an express statute of limitations for RCW 19.86.080(1) claims forms the basis of the two certified questions before us.

B.     *Question 1—Whether the four-year statute of limitations under RCW 19.86.120 applies to the Washington Attorney General's Complaint brought pursuant to its parens patriae authority under RCW 19.86.080 that seeks actual damages for violations of RCW 19.86.030?*

I agree with the majority's conclusion that RCW 19.86.120's plain language excludes RCW 19.86.080 claims. RCW 19.86.120 provides, in pertinent part, that "[a]ny action to enforce a claim for damages under RCW 19.86.090 shall be forever barred unless commenced within four years after the cause of action accrues." RCW 19.86.120 is silent as to whether it applies to claims brought under RCW 19.86.080. "'Where a statue specifically designates the things or classes of things upon which it operates, an inference arises in law that all things or classes of things omitted from it were intentionally omitted by the legislature under the maxim expression unis est exclusion alterius—specific inclusions exclude implication.'"[7] The legislature's omission of RCW 19.86.080 claims from RCW 19.86.120 indicates its intent that RCW 19.86.120's time bar does not apply to RCW 19.86.080 claims.

---

[7] *Ellensburg Cement Prods., Inc. v. Kittitas County*, 179 Wn.2d 737, 750, 317 P.3d 1037 (2014) (internal quotation marks omitted) (quoting *Landmark Dev., Inc. v. City of Roy*, 138 Wn.2d 561, 571, 980 P.2d 1234 (1999)).

C.    *Question 2—Whether RCW 4.16.160 should be applied to the Washington Attorney General's parens patriae antitrust lawsuit seeking actual damages and restitution for citizens of Washington?*

Although I agree with the majority that RCW 19.86.120 does not apply to parens patriae actions brought under RCW 19.86.080, I do not agree that these actions are exempt from all other statutes of limitations by virtue of RCW 4.16.160.

      i.    The Exemption from Statutory Time Limits in RCW 4.16.160 Is Limited to Actions "Brought in the Name or For the Benefit of the State"

Chapter 4.16 RCW prescribes general time limits within which civil actions must be commenced. *See* RCW 4.16.005. Of particular interest here are two catchall provisions, RCW 4.16.080(2) and RCW 4.16.130. RCW 4.16.080(2) requires actions seeking recovery for "any other injury to the person or rights" to be filed within three years, and RCW 4.16.130 requires "an action for relief not [otherwise] provided for" to be filed within two years. RCW 4.16.160, however, exempts from these time limits those "actions brought in the name or for the benefit of the state."

Notwithstanding that broad language, "RCW 4.16.160 . . . has never been literally followed." *U.S. Oil & Ref. Co. v. Dep't of Ecology*, 96 Wn.2d 85, 89, 633 P.2d 1329 (1981) (holding RCW 4.16.160 inapplicable to a claim by the State for penalties/forfeitures because it is limited to remedial claims). Throughout the years, we have recognized many situations in which RCW 4.16.160's exemption from time bars does not apply. *Id.*

9

Relevant to this case is the "well-founded" rule that the State cannot use RCW 4.16.160 to revive time-barred private actions. *State v. Vinther*, 176 Wash. 391, 393, 29 P.2d 693 (1934). As we have repeatedly explained, RCW 4.16.160 does not apply "when the state is a mere formal plaintiff in a suit, [acting] not for the purpose of asserting any public right or protecting any public interest, but merely to form a conduit through which one private person can conduct litigation against another private person." *Id.*; *see also Hermann v. Cissna*, 82 Wn.2d 1, 5, 507 P.2d 144 (1973).

For that reason, in actions brought by the State, our inquiry has focused on "whether the state . . . is acting in its sovereign capacity in furtherance of its public policy, or merely suing in its own name for the benefit of private individuals."[8]

---

[8] In contrast, when the action involves a *municipal* act, "The principal test for determining whether a municipal act involves a sovereign or proprietary function is whether the act is for the common good or whether it is for the specific benefit or profit of the corporate entity." *Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols–Kiewit Constr. Co.*, 165 Wn.2d 679, 687, 202 P.3d 924 (2009) (citing *Okeson v. City of Seattle*, 150 Wn.2d 540, 550, 79 P.3d 1279 (2003)). We have applied the exemptions of RCW 4.16.160 in cases where the municipality engages in traditional state functions such as taxation, building schools, and maintaining public recreational spaces as opposed to engaging in conduct traditionally left to the private sector. *Compare id.* at 690-94 (constructing public baseball stadium); *Bellevue Sch. Dist. No. 405 v. Brazier Constr. Co.*, 103 Wn.2d 111, 115-16, 691 P.2d 178 (1984) (building schools); *Allis-Chambers Corp. v. City of N. Bonneville*, 113 Wn.2d 108, 112, 775 P.2d 953 (1989) (collecting business and occupation taxes); *City of Tacoma v. Hyster Co.*, 93 Wn.2d 815, 821, 613 P.2d 784 (1980) (same); *Commercial Waterway Dist. No. 1 of King County v. King County*, 10 Wn.2d 474, 478-80, 117 P.2d 189 (1941) (purchasing property as part of tax collecting duties); *Gustaveson v. Dwyer*, 78 Wash. 336, 337, 139 P. 194 (1914) (same),

*Vinther*, 176 Wash. at 393. The State undoubtedly acts in its sovereign capacity in furtherance of public policy when it seeks to ensure the proper operation of the government or to collect taxes and fees. *See State ex rel. Carroll v. Bastian*, 66 Wn.2d 546, 546-49, 403 P.2d 896 (1965) (unraveling an invalidly incorporated municipality); *State v. Miller*, 32 Wn.2d 149, 151-56, 201 P.2d 136 (1948) (preventing nepotism in governmental operations); *State v. City of Aberdeen*, 34 Wash. 61, 62-70, 74 P. 1022 (1904) (collecting liquor license fees).

However, when the State seeks to collect on private claims against private entities for the benefit of private parties, the result is less clear as to whether such cases are "for the benefit of the state" under RCW 4.16.160. This is because there is always some conceivable public benefit (such as general deterrence) when the State enforces its laws, regardless of whether the lawsuit is brought on its own behalf or on behalf of others. Our decisions therefore look to the legislative intent concerning each statute to determine whether it was designed primarily to further a stated public policy or instead to secure private recovery. *See Hermann*, 80 Wn.2d at 5-6 (policy of protecting public from deceptive insurance practices); *Vinther*, 176

---

*aff'd on different grounds*, 83 Wash. 303, 304-06, 145 P. 458 (1915), *with Wash. Pub. Power Supply Sys.*, 113 Wn.2d at 299-300 (operating electricity plant); *Wash. State Major League Baseball*, 165 Wn.2d at 688-89 (operating water system (citing *City of Moses Lake v. United States*, 430 F. Supp. 2d 1164, 1171-78 (E.D. Wash. 2006))).

11

Wash. at 394 (policy of protecting health of state workforce through workers compensation accident fund). Legislative intent is key.

    ii.    <u>The Legislature Expressly Excluded Parens Patriae Actions from the Reach of RCW 4.16.160's Exemption</u>

We do not need to look any further than the plain language of RCW 19.86.080 to determine whether the legislature intended parens patriae actions primarily to further a public policy "for the benefit of the state," rather than primarily to secure private recovery. The legislature has said it is for the latter purpose, not the former.

This is clear from the statute's language. RCW 19.86.080(1) authorizes the attorney general to bring actions "in the name of the state, *or* as parens patriae." (Emphasis added.) The legislature thus clearly distinguished the first type of action—one brought in the name of the State—from the second type—one brought by the State not in its own "name" but as "parens patriae." The legislature also specified the beneficiaries of such parens patriae actions, and it's not the State: RCW 19.86.080(1) says that such parens patriae actions are brought "on behalf of persons residing in the state" and that any recovery *must* go to these persons in interest whose money or property were unlawfully acquired. RCW 19.86.080(3).

This distinctive language is more than just semantics. It reflects the legislature's intent, as expressed in bill reports, that the parens patriae vehicle would "allow[] the state to bring legal actions or seek remedies *on behalf of individuals* in

12

order to protect *them* from harm." H.R. REP. SSB 5228, *supra*, at 2 (emphasis added). From this, it is clear that the legislature authorized the attorney general to bring parens patriae actions under RCW 19.86.080 to protect individuals, not the general public.

Because these actions are brought on behalf of and for the protection of specific individuals, it logically follows that the legislature did not intend such actions to be exempt from any time bar under RCW 4.16.160, especially when this court has repeatedly said RCW 4.16.160 does not apply to actions where the State acts as a mere conduit for private claims. *See Hermann*, 82 Wn.2d at 5; *Vinther*, 176 Wash. at 393; *see also Pac. Nw. Bell Tel. Co. v. Dep't of Revenue*, 78 Wn.2d 961, 966, 481 P.2d 556 (1971) (holding the defendant could assert a statute of limitations defense against the State, notwithstanding the exemptions of RCW 4.16.160, because the State's echeat claim was derivative of the underlying private individual's claim against the defendant).

The majority relies on the CPA's general policy statement to support a contrary conclusion. Majority at 16. But we have explicit, plain statutory language in RCW 19.86.080 that applies specifically to parens patriae claims.[9] That specific

---

[9] In light of the limited number of jurisdictions without an express statute of limitation provision, the Superior Court of Connecticut's decision in *Connecticut v. Mobilia, Inc.*, No. 65134, 1983 WL 14950, at *1-2 (Super. Ct. Conn. June 3, 1983)

13

legislative directive controls over the more general policy statement. Of even more concern is the unlikely results the majority's opinion produces. Under that opinion, direct purchasers must bring their claims within four years; yet the attorney general can revive these dead claims and even bring the far more attenuated indirect purchaser claims at any time in perpetuity. The plain language of RCW 19.86.080 avoids this irrational result.

Contrary to the majority's opinion, *Hermann* and *Vinther* do not compel a different result. Majority at 14-16. They engaged in the same analysis that I use here, namely, they asked whether the claims brought by the State were primarily to benefit the State or primarily to benefit the individuals. Although they ruled that those actions were primarily to benefit the State, they did so based on the language and policies of the specific statutes at issue there. That language and those policies showed that the main point of those statutes was to benefit the State. *See Hermann*, 82 Wn.2d at 5-7 (analyzing the legislative policy and statutory framework to determine whether the legislature intended actions by the insurance commissioner to be for the benefit of the general public); *Vinther*, 176 Wash. at 393-95 (analyzing the legislative policy and statutory framework to determine whether the legislature intended actions brought by the State pursuant to the Workers' Compensation Act,

---

(unpublished) appears to be the only analogous case, and it suffers from the same interpretive flaw.

Title 51 RCW, to be in furtherance of some public policy rather than for the benefit of private individuals). Not so here. As discussed above, RCW 19.86.080(1) classifies parens patriae actions as brought "on behalf of persons residing in the state" and distinguished them from actions brought "in the name of the state" or "for the benefit of the state." RCW 4.16.160. This language resolves the issue addressed in *Hermann* and *Vinther*, which was whether the legislature intended the action to be one "for the benefit of the state" under RCW 4.16.160.

Thus, the legislative record and plain language of RCW 19.86.080 shows that the legislature did not intend to exempt parens patriae actions under RCW 19.86.080 from statutory time limitations. No further analysis is required.

iii.   We Have Never Characterized Parens Patriae Actions under RCW 19.86.080 as Actions for the Benefit of the State

The majority also quotes *Seaboard Surety Co. v. Ralph Williams' Northwest Chrysler Plymouth, Inc.*, 81 Wn.2d 740, 746, 504 P.2d 1139 (1973), in support of its assertion that all RCW 19.86.080 claims are for the benefit of the state. Majority at 16. But that's not what *Seaboard Surety* said.

*Seaboard Surety* was decided in 1973, well before the legislature amended RCW 19.86.080 in 2007 to include parens patriae actions. At that time, the attorney general could sue only "in the name of the state" for injunctive relief, and not as parens patriae for "persons residing in the state." *Compare* LAWS OF 1970, 1st Ex.

Sess., ch. 26, § 1, *with* LAWS OF 2007, ch. 66, § 1. This distinction was critical to *Seaboard Surety*'s reasoning. *See Seaboard Sur.*, 81 Wn.2d at 746. The court concluded that injunctive relief was the main focus of the attorney general's action because at that time, the attorney general could bring only actions for injunctive relief. Although the statute allows the trial court to award individual damages, a claim for such damages could be sought only "incidental" to a suit for injunctive relief and an award for damages was uncertain because it was subject to the court's discretion. *See id.*; *see also Lightfoot v. MacDonald*, 86 Wn.2d 331, 334, 544 P.2d 88 (1976) (quoting *Seaboard Surety* for same description); *State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.*, 82 Wn.2d 265, 276, 510 P.2d 233 (1973) (quoting same).

The statute is different now. The legislature altered this framework in 2007 when it authorized the attorney general to bring actions "as parens patriae on behalf of persons residing in the state." LAWS OF 2007, ch. 66, § 1.

iv.     The State Has Nothing to Gain from This Parens Patriae Action

Finally, even if the majority were correct that the legislature intended parens patriae actions to further the CPA's goal "to protect the public and foster fair and honest competition," RCW 19.86.920, it goes too far by concluding that this is the

16

main goal of every parens patriae case. Majority at 19-20. I would still find RCW 4.16.160 does not apply to the State's parens patriae claims in this case.

Just because a particular type of action can in some instances trigger the exemptions of RCW 4.16.160 does not mean that it always does. Whether it does in a particular case depends on the governmental interest at stake. *See United States v. Beebe*, 127 U.S. 338, 342, 8 S. Ct. 1083, 32 L. Ed. 121 (1888) (recognizing that in some instances, an action by the government to set aside a land patent could involve a cognizable public interest). *Beebe* is a good example of when the State's interest in a particular action is too attenuated to be considered for the benefit of the government. *See Hermann*, 82 Wn.2d at 8; *Vinther*, 176 Wash. at 393.

In *Beebe*, the Supreme Court held that the government's action to set aside a land patent was not exempt from the statutory time bar applicable to private claims, even though the action was brought by the government. The reason was that the government in that instance had no interest in the suit, had nothing to gain from the relief prayed for, and had nothing to lose if the relief were denied. 127 U.S. at 346. The government's lack of interest in the case was further shown by the fact that the government was not involved in the management of the case. *Id.* at 347.

Here, as in *Beebe*, the State has no interest in the outcome of this case. There is no ongoing public harm to correct because the underlying conspiracy became

technologically obsolete in 2007. The State has nothing to gain from the restitution sought and nothing to lose if such relief were denied because it sought relief solely "on behalf of persons residing in the state" and any restitution award *must* go to the person in interest whose money or property was unlawfully acquired. RCW 19.86.080(1), (3).

Even if the State were to retain some of the moneys awarded as a result of escheat, that would not alter the analysis: the State's escheat claim is derivative of the underlying private claims and therefore subject to the same statute of limitations as those private claims. *See Dep't of Revenue v. Puget Sound Power & Light Co.*, 103 Wn.2d 501, 507, 694 P.2d 7 (1985) (not exempting the State's escheat claim for abandoned utility deposits and dividends); *Pac. Nw. Bell Tel.*, 78 Wn.2d at 966 (not exempting the State's escheat claim for unclaimed property).[10]

CONCLUSION

RCW 19.86.080 expressly states that parens patriae actions brought under RCW 19.86.080 are commenced on "behalf of persons residing in the state" to protect them from harm. They are not brought "in the name of" or "for the benefit

---

[10] Again, *Hermann* does not compel a different result. Unlike in *Hermann*, where the State had an interest in protecting the integrity of the existing insurance system through deterrence of potentially repetitive behavior, 82 Wn.2d at 7, here, there is no potential for the alleged conspiracy to reoccur as CRTs are old technology.

of the state." The legislative reports concerning that statute's 2007 amendment support this conclusion. I would therefore answer the certified questions as follows: Neither RCW 19.86.120 nor RCW 4.16.160 apply to parens patriae actions brought pursuant to RCW 19.86.080.

Gordon McCloud, J.

Madsen, C.J.